J-S27041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| DASHEEM M. FERRON | : | |
| Appellant | : | No. 2953 EDA 2024 |

Appeal from the PCRA Order Entered September 30, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001062-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| DASHEEM FERRON | : | |
| Appellant | : | No. 2954 EDA 2024 |

Appeal from the PCRA Order Entered September 30, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000270-2021

BEFORE: STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED AUGUST 22, 2025**

Appellant, Dasheem M. Ferron,[1] appeals from the September 30, 2024,

order entered in the Court of Common Pleas of Philadelphia County dismissing

_____

[*] Former Justice specially assigned to the Superior Court.
[1] We acknowledge that, for lower court docket number CP-51-CR-0000270-2021, the lower court lists Defendant/Appellant as "Dasheem Ferron" without

*(Footnote Continued Next Page)*

his first petition filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9545, following an evidentiary hearing, at lower court docket numbers CP-51-CR-0001062-2020 ("1062-2020") and CP-51-CR-0000270-2021 ("270-2021"). After our careful review, we affirm.

The relevant facts and procedural history are as follows: At lower court docket number 1062-2020, on February 10, 2020, the Commonwealth filed an Information charging Appellant with manufacture, delivery, or possession with the intent to manufacture or deliver a controlled substance ("PWID"), 35 P.S. § 780-113(a)(30), as well as possession of a controlled substance, 35 P.S. § 780-113(a)(16), in connection with an incident occurring on December 14, 2019. Represented by counsel,[2] on February 11, 2022, Appellant entered an open guilty plea to the charge of PWID at docket number 1062-2020.[3]

Specifically, following a lengthy colloquy, Appellant admitted that, on December 14, 2019, undercover Philadelphia police officers observed him conducting two drug transactions while he was standing on a corner. N.T., 2/11/22, at 13-15. As Appellant reached into a nearby blue Chevrolet, the

_____

reference to a middle initial whereas the middle initial "M." is referenced in lower court docket number CP-51-CR-0001062-2020. We continue to use the same captions as those used in the lower court, and note that, hereafter, Mr. Ferron is referred to as "Appellant."

[2] Appellant entered guilty pleas at docket numbers 1062-2020 and 270-2021. Stephen P. Patrizio, Esquire, represented Appellant during the guilty plea and sentencing hearings for both docket numbers.

[3] The possession charge under Subsection 780-113(a)(16) was *nol prossed*.

- 2 -

police approached him. *Id.* The police discovered three jars of marijuana on Appellant's person, as well as forty jars of marijuana on the front seat of the blue Chevrolet. *Id.* The total weight of the marijuana was twenty-six grams. *Id.* at 15.

After the trial court accepted Appellant's guilty plea at docket number 1062-2020, the matter proceeded immediately to a sentencing hearing, at which the trial court acknowledged it had reviewed a presentence investigation report. The trial court sentenced Appellant to time served to six months in prison. *Id.* at 42. Appellant was given credit for time served and paroled immediately. On February 16, 2022, Appellant filed a timely counseled motion for reconsideration of his sentence, which the trial court denied on June 24, 2022. Appellant did not file a direct appeal.

Meanwhile, at lower court docket number 270-2021, on February 5, 2021, the Commonwealth filed an Information charging Appellant with numerous firearm offenses in connection with an incident occurring on April 9, 2020. Represented by counsel, on December 10, 2021, Appellant entered an open guilty plea to the charge of possession of firearm prohibited, 18 Pa.C.S.A. § 6105(a)(1).[4]

Specifically, following a lengthy colloquy, Appellant admitted that, on April 9, 2020, Philadelphia police officers observed a black Chevrolet fail to

_____

[4] The remaining firearm offenses were *nol prossed*.

- 3 -

stop at a stop sign. N.T., 12/10/21, at 11. The police stopped the black Chevrolet and found Appellant in the driver's seat. *Id.* The police observed the handle of a firearm sticking out of Appellant's right front jacket pocket, and they seized the handgun. *Id.* at 12. Appellant did not have a permit to carry a firearm. *Id.* Also, since he had a previous conviction, he was ineligible to possess a firearm.[5] *Id.*

Appellant's sentence at lower court docket number 270-2021 was deferred until February 11, 2022. Thus, in addition to being sentenced for his conviction at docket number 1062-2020 on February 11, 2022, as indicated *supra*, Appellant was also sentenced for his conviction at docket number 270-2021 on February 11, 2022. Regarding the firearm offense at docket number 270-2021, the trial court sentenced Appellant to five years to ten years in prison with credit for time served. On February 16, 2022, Appellant filed a timely counseled motion for reconsideration of his sentence, which the trial court denied on June 24, 2022. Appellant did not file a timely notice of appeal.

On or about September 20, 2022, Appellant filed a timely *pro se* PCRA petition at solely docket number 270-2021 seeking the restoration of his direct appeal rights *nunc pro tunc* due to the ineffective assistance of trial counsel.

---

[5] In connection with offenses occurring in 2014 and 2017, Appellant was convicted of PWID in two separate cases, thus making him ineligible to possess a firearm. *See* 18 Pa.C.S.A. § 6105(c)(2). Further, he was on probation for these PWID cases when he committed the offenses at lower court docket numbers 1062-2020 and 270-2021.

The PCRA court appointed counsel, and following the filing of an amended PCRA petition, the PCRA court granted Appellant relief. Specifically, the PCRA court reinstated Appellant's direct appeal rights *nunc pro tunc* solely for docket number 270-2021. Appellant then filed a timely appeal to this Court,[6] and by memorandum filed on December 19, 2023, we affirmed Appellant's judgment of sentence for lower court docket number 270-2021. ***See Commonwealth v. Ferron***, No. 257 EDA 2023 (Pa.Super. filed 12/19/23) (unpublished memorandum). Appellant did not file a petition for allowance of appeal with our Supreme Court.

On or about January 22, 2024, regarding docket number 270-2021, Appellant filed a *pro se* PCRA petition.[7] At this time, Appellant did not file a *pro se* or counseled PCRA petition at docket number 1062-2020.

On April 22, 2024, Stephen O'Hanlon, Esquire, entered his appearance at both lower court docket numbers. Thereafter, at both docket numbers,

---

[6] Appellant was represented by new counsel, Peter Erdely, Esquire, on direct appeal. Therein, Appellant presented several challenges to the discretionary aspects of his sentence of five years to ten years in prison for the firearm offense.

[7] In his January 22, 2024, *pro se* PCRA petition at docket number 270-2021, Appellant claimed guilty plea counsel was ineffective in failing to consult with him before he entered his guilty plea, failing to discuss the relevant sentencing guidelines, and failing to file a requested post-sentence motion to withdraw his guilty plea.

PCRA counsel filed an identical PCRA petition on June 10, 2024,[8] as well an identical amended petition on June 27, 2024, listing both docket numbers in the caption.[9] On September 19, 2024, the Commonwealth filed an answer at both docket numbers.

On September 30, 2024, the PCRA court held an evidentiary PCRA hearing as to both docket numbers. At the commencement of the PCRA hearing, Attorney O'Hanlon ("PCRA counsel") indicated that Appellant was raising claims of ineffective assistance of Attorney Patrizio ("guilty plea counsel"). Specifically, he averred that guilty plea counsel was ineffective in

_____

[8] In the June 10, 2024, counseled PCRA petition, Appellant averred he had newly discovered facts for purposes of invoking a PCRA timeliness exception, as well as meeting the requirements of after-discovered evidence, in relation to Detective Rodney Hunt. Specifically, he averred he had new evidence of police corruption/misconduct.

[9] In the June 27, 2024, amended counseled PCRA petition, Appellant sought an evidentiary PCRA hearing and contended he was entitled to withdraw his guilty pleas at both lower court docket numbers due to newly discovered facts and/or after-discovered evidence. He claimed he had new evidence indicating that Detective Hunt has a pattern of violating departmental rules. He contended he "did not know of the full details of Detective Hunt's habitual background of misconduct and involvement in [Appellant's] case, including initiating a pretextual traffic stop and illegal search and supervising and instructing the other officers involved, Officer Edward Keppol and Joshua Kling." Appellant's Amended PCRA Petition, filed 6/27/24, at 12. Appellant asserted he was not informed of Detective Hunt's habitual misconduct until after he entered his guilty pleas, and the information would have provided a valid basis for viable suppression motions. *Id.*

Moreover, as to his guilty plea at docket number 270-2021, he claimed guilty plea counsel was ineffective in failing to advise Appellant of the sentencing guidelines, failing to inform him that his firearm conviction could have been consolidated with other convictions for sentencing purposes, and failing to file a motion to withdraw his plea to the firearm offense.

failing to discuss the sentencing guidelines for a firearm offense with Appellant, failing to disclose the Commonwealth had offered a sentence of four years to eight years in prison in exchange for Appellant's guilty plea to the firearm offense, failing to discuss the possibility of consolidating cases for sentencing, and failing to file a post-sentence motion to withdraw his guilty plea for the firearm offense. N.T., 9/30/24, at 7.

PCRA counsel specifically advised the PCRA court that Appellant was withdrawing his claims of newly discovered facts and/or after-discovered evidence in relation to alleged police misconduct, particularly as to Detective Hunt. *Id.* at 6, 8. In this vein, PCRA counsel noted that "Detective Hunt was not on the scene; he just processed the job at the detective division. Therefore, his [alleged] recent misconduct would not be relevant to any misconduct associated with [Appellant's] case." *Id.* at 8. The PCRA court asked PCRA counsel, "So, you're withdrawing the claim of police officer misconduct?" *Id.* PCRA counsel responded, "Yes." *Id.*

Appellant then called guilty plea counsel to testify. On direct examination, PCRA counsel asked guilty plea counsel if he remembered being in a "smart room" when the Commonwealth conveyed an offer of four years to eight years in prison as to the firearm offense. *Id.* at 10. Guilty plea counsel responded, "Yes." *Id.* PCRA counsel then asked guilty plea counsel if this offer was conveyed to Appellant, and guilty plea counsel responded, "Absolutely." *Id.* He clarified that he conveyed it "verbally, many times." *Id.*

Guilty plea counsel noted Appellant informed him that, during the stop of his vehicle in the case resulting in the firearm charges (docket number 270-2021), the police were not wearing body cameras, so Appellant asked him to file a suppression motion. *Id.* at 11-12. However, the police produced a video of the stop, and guilty plea counsel showed it to Appellant. *Id.* Guilty plea counsel advised Appellant the video was "pretty damaging," and he recommended Appellant neither litigate a motion to suppress nor proceed to trial. *Id.* at 12. Guilty plea counsel testified he then began negotiations with the Commonwealth. *Id.*

Guilty plea counsel testified he did not file a motion to withdraw Appellant's guilty plea in either case because he "wasn't asked to." *Id.* at 15. He denied that he informed either Appellant or Appellant's stepfather that he was ineffective in the handling of Appellant's cases. *Id.* Guilty plea counsel testified that, in his opinion, he was not ineffective. *Id.*

Regarding the applicable sentencing guidelines for the firearm offense at docket number 270-2021, guilty plea counsel acknowledged his awareness that the "the VUFA[10] guideline for this case, because it was stated during the guilty plea, were 60 to 70 months, plus or minus 12 months[.]" *Id.* at 17 (footnote added). PCRA counsel asked guilty plea counsel if the sentencing guidelines were explained to Appellant before he entered his guilty plea, and

_____

[10] "VUFA" stands for violation of the Uniform Firearms Act, 18 Pa.C.S.A. §§ 6101-6128.

- 8 -

guilty plea counsel answered, "Of course." *Id.* He noted he also explained to Appellant that "the bottom end of the guidelines would be five to 10 years." *Id.* He additionally noted he explained to Appellant that the offer made by the Commonwealth in the "smart room" was "a year below the bottom of the guidelines." *Id.* That is, he testified he fully explained to Appellant that the offer made by the Commonwealth was "below the bottom range of the guidelines and in the fully mitigated range of the guidelines for VUFA 6105[.]" *Id.* at 23.

Guilty plea counsel testified Appellant was not interested in the plea offer from the Commonwealth because Appellant "believed that this was a case that should be time served or a county sentence." *Id.* at 18. He specifically testified Appellant rejected the Commonwealth's offer of four to eight years in prison for the firearm offense. *Id.* at 22.

Guilty plea counsel additionally testified that he had a "great concern" in this case because Appellant had "two pending VOPs[11] before" the Honorable Judge Campbell. *Id.* at 18 (footnote added). Guilty plea counsel was concerned Judge Campbell would "hit Appellant hard," so he tried to get the VOP cases assigned to the Honorable Judge Covington, who was the trial court judge scheduled for Appellant's guilty plea hearing at docket number 270-2021. *Id.* at 19.

_____

[11] Here, we recognize "VOP" refers to "violation of probation."

Guilty plea counsel testified he believed that, if the VOP cases and firearm case were dealt with at one proceeding, Appellant would get a more lenient aggregate sentence. *Id.* at 20. Guilty plea counsel testified he discussed this strategy with Appellant. *Id.* Specifically, he testified that he discussed the idea of consolidating sentencing on four cases (the two VOP cases, the case at docket number 1062-2020, and the case at docket number 270-2021), so that Judge Covington would sentence Appellant at one hearing. *Id.* Guilty plea counsel testified he also discussed with Appellant the possibility of consolidating the four cases before Judge Campbell. *Id.* However, in the end, after "specific conversations with [Appellant] and his family,…the strategy was to get Judge Covington to take the VOPs from Judge Campbell." *Id.* at 19.

Guilty plea counsel testified that, when Appellant appeared before Judge Covington to enter his guilty plea at docket number 270-2021, he asked Judge Covington if she would take the VOP cases, and she said, "Absolutely." *Id.* Guilty plea counsel testified he was "tickled to death" by this; however, thereafter, Judge Campbell declined to reassign the VOP cases to Judge Covington. *Id.* Guilty plea counsel testified he tried to "achieve consolidation" before Judge Covington, but "Judge Campbell was not having it." *Id.* at 23.

Guilty plea counsel noted he was disappointed with the sentence imposed by Judge Covington for the firearm offense at docket number 270-2021. *Id.* at 24. He noted that, given the abundance of mitigation, he

believed Appellant would receive a sentence well below that which was imposed by Judge Covington. *Id.* He also noted that, in the VOP cases, Judge Campbell imposed sentences consecutive to the sentence Appellant received at docket number 270-2021. *Id.*

On cross-examination, guilty plea counsel testified that he had better communication with Appellant than he had with many of his other clients. *Id.* at 27. He noted he had many phone conversations with him. *Id.* Guilty plea counsel confirmed he sought consolidation of Appellant's cases before Judge Covington. *Id.* at 30-31. He testified he "wanted to consolidate before Judge Covington because [he] thought [he] would get a…fair resolution." *Id.* at 34. Guilty plea counsel testified he could not remember if his conversation with Judge Convington regarding consolidation was "on the record," but he "vividly" remembered the conversation. *Id.*

Guilty plea counsel reiterated that, if Appellant had asked, he would have filed a motion to withdraw his guilty plea. *Id.* He noted he made no promises to Appellant. *Id.*

Malik Wilson, who is Appellant's stepfather, testified that, after Appellant was sentenced on February 11, 2022, guilty plea counsel informed him that he "didn't live up to his standards in representing [Appellant]." *Id.* at 39. Mr. Wilson indicated he participated in three-way phone calls with Appellant and guilty plea counsel "four or five" times. *Id.* at 40. He testified he never heard guilty plea counsel discuss sentencing guidelines or consolidation; however,

- 11 -

he admitted he heard guilty plea counsel indicate he was looking to have all the cases heard before a "better judge." *Id.* at 41.

Appellant testified guilty plea counsel never visited him, and he had difficulty getting guilty plea counsel to answer the telephone. *Id.* at 48. He acknowledged he spoke to guilty plea counsel during three-way calls involving his stepfather. *Id.* He testified he asked guilty plea counsel to set up video calls; however, guilty plea counsel declined. *Id.*

Regarding the Commonwealth's "smart room" offer, Appellant admitted that guilty plea counsel told him about the offer. *Id.* at 49. Appellant specifically admitted that guilty plea counsel told him the offer was for four to eight years in prison for the firearm case, and guilty plea counsel advised him to take the offer. *Id.* However, Appellant testified guilty plea counsel "never told me that the DA was talking about consolidating[.]" *Id.* He testified that any discussions about consolidating were done "behind his back," and if he had known about the discussions, he "wouldn't have taken a guilty plea for a five to ten minimum." *Id.*

PCRA counsel asked Appellant whether guilty plea counsel "advised [him] that the VUFA 6105…guidelines were 60 to 70 months plus or minus 12, and that is five years….That would be five to six-and-a-half years at the bottom end plus or minus 12 months?" *Id.* at 50. Appellant responded that he "never even heard of VUFA until [he] came up state and filed a PCRA. It

was never brought up to [him], no guidelines or anything. [He] never heard of 6105 VUFA." *Id.*

Appellant admitted that, after the police produced a video of the vehicle stop related to the charges at docket number 270-2021, he and guilty plea counsel decided "he wouldn't be able to beat the case. [The] agreement was for [counsel] to get [him] a good deal." *Id.* at 51. Appellant claimed that he, as opposed to counsel, asked Judge Covington to sentence him on all of his cases, including the VOP cases. *Id.* at 52. Appellant testified guilty plea counsel never discussed any kind of case law associated with consolidation. *Id.* at 54.

Appellant testified he twice asked guilty plea counsel to file a motion to withdraw his guilty plea after he was sentenced to five years to ten years in prison. *Id.* Appellant testified that he told counsel: "Withdraw the guilty plea, I don't want the five to 10. They offered me four to eight." *Id.* at 53. Appellant claimed that, after the February 11, 2022, sentencing hearing, guilty plea counsel "hid from [him]." *Id.* He noted that he received a consecutive three to six years in prison from Judge Campbell on the VOP cases. *Id.* at 54.

At the conclusion of the evidentiary hearing, by order entered on September 30, 2024, the PCRA court denied Appellant's PCRA petitions at both docket numbers.

On October 29, 2024, Appellant filed timely separate *pro se* notices of appeal at both docket numbers. Attorney O'Hanlon withdrew his appearance,

- 13 -

and new counsel, Scott Sigman, Esquire, entered his appearance on behalf of Appellant. This Court *sua sponte* consolidated the notices of appeal. All Pa.R.A.P. 1925 requirements have been adequately met.

On appeal, Appellant sets forth the following issues in his "Statement of the Questions Involved" (verbatim):

1. Whether the lower court erred in denying [Appellant's] Petition for Post-Conviction Collateral Relief pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9542-46, by Court Order of September 30, 2024, without affording him an evidentiary hearing since [Appellant's] conviction and sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place?

2. Whether the lower court erred in denying [Appellant's] Petition for Post-Conviction Collateral Relief pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9542-46, by Court Order of September 30, 2024, without affording him an evidentiary hearing since, under the totality of the circumstances, there are genuine issues concerning material facts and legitimate purposes would be served by such hearing?

3. Whether the lower court erred in denying [Appellant's] Petition for Post-Conviction Collateral Relief pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9542-46, by Court Order of September 30, 2024, without affording him an evidentiary hearing since [Appellant's] petition makes out a *prima facie* case warranting such hearing under the totality of circumstances, since trial counsel provided ineffective assistance that lacked any reasonable basis which prejudiced [Appellant]?

Appellant's Brief at 6-7.

Initially, we note the following:

On appeal from the denial of PCRA relief, our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. The PCRA court's factual determinations are entitled to deference, but its legal determinations are subject to our plenary review.

*Commonwealth v. Nero*, 58 A.3d 802, 805 (Pa.Super. 2012) (quotation marks and quotations omitted).

Before addressing the merits of the issues presented on appeal, we must determine whether we have jurisdiction.

Pennsylvania law makes clear no court has jurisdiction to hear an untimely PCRA petition. The most recent amendments to the PCRA, effective January 16, 1996, provide a PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

*Commonwealth v. Monaco*, 996 A.2d 1076, 1079 (Pa.Super. 2010) (citations omitted).

[There are] three statutory exceptions to the timeliness provisions in the PCRA [that] allow for the very limited circumstances under which the late filing of a petition will be excused. 42 Pa.C.S.A. § 9545(b)(1). To invoke an exception, a petitioner must allege and prove:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

- 15 -

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

*Id.* at 1079-80 (citing 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii)).

Any petition invoking a timeliness exception must be filed within one year of the date the claim could have been presented.[12] 42 Pa.C.S.A. § 9545(b)(2). "We emphasize that it is the petitioner who bears the burden to allege and prove that one of the timeliness exceptions applies." *Commonwealth v. Marshall*, 947 A.2d 714, 719 (Pa. 2008) (citation omitted). Lastly, there is "no generalized equitable exception to the jurisdictional one-year time bar pertaining to post-conviction petitions." *Commonwealth v. Brown*, 943 A.2d 264, 267 (Pa. 2008).

As indicated *supra*, the instant matter involves Appellant's appeals from the September 20, 2024, order denying his PCRA petitions at two separate lower court docket numbers: 1062-2020 and 270-2021. We examine each appeal in turn to determine whether the appeal is properly before us.

Regarding docket number 1062-2020, Appellant was sentenced on February 11, 2022, and he filed a timely post-sentence motion, which the trial

_____

[12] On October 24, 2018, the General Assembly amended Section 9545(b)(2) and extended the time for filing a petition from sixty days to one year from the date the claim could have been presented. *See* 2018 Pa.Legis.Serv.Act 2018-146 (S.B. 915), effective December 24, 2018. The amendment applies only to claims arising one year before the effective date of this section, December 24, 2017, or thereafter.

court denied on June 24, 2022. Appellant did not file a direct appeal.[13] Accordingly, his judgment of sentence became final thirty days later, on July 24, 2022, when the time for filing a direct appeal to this Court expired. **See** 42 Pa.C.S.A. § 9545(b)(3); Pa.R.A.P. 903(a). Appellant had one year, until approximately July 24, 2023, to file a timely PCRA petition. **See** 42 Pa.C.S.A. § 9545(b)(1). However, Appellant filed his PCRA petition at docket number 1062-2020 on June 10, 2024, and, consequently, it is facially untimely.

However, this does not end our inquiry as Appellant alleges on appeal that he has met the newly discovered facts exception under Subsection 9545(b)(1)(ii). Specifically, pointing to the assertions he made in his counseled PCRA petition filed on June 10, 2024, as well as the counseled amended PCRA petition on June 27, 2024, Appellant suggests that he pled and proved "there exists newly discovered evidence in relation to Detective Rodney Hunt." Appellant's Brief at 17. He avers that evidence of Detective Hunt's habit of violating departmental rules, including giving false testimony, was not disclosed to him prior to the entry of his guilty plea. Accordingly, he claims he has met the newly discovered facts exception as it relates to docket number 1062-2020. We disagree.

_____

[13] Notably, contrary to docket number 270-2021, Appellant's appeal rights were not reinstated *nunc pro tunc* via the PCRA for docket number 1062-2020.

Here, at the commencement of the September 20, 2024, PCRA evidentiary hearing,[14] PCRA counsel advised the PCRA court that Appellant was withdrawing all claims related to the alleged corruption/misconduct of Detective Hunt. N.T., 9/30/24, at 8. Specifically, PCRA counsel stated, "[Detective Hunt's] recent misconduct would not be relevant to any misconduct associated with [Appellant's] case." *Id.* Accordingly, the issue of Detective Hunt's alleged misconduct was neither explored nor further discussed at the PCRA evidentiary hearing, and Appellant offered no evidence related thereto.

Accordingly, inasmuch as Appellant withdrew his claim of newly discovered facts,[15] we conclude the issue is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Leaner*, 202 A.3d 749, 765 n.3

_____

[14] In his appellate brief, in the procedural history set forth in the "Statement of the Case," Appellant acknowledges that "[f]ollowing an evidentiary hearing on September 30, 2024, the PCRA [petition] was denied." Appellant's Brief at 9. However, he then inexplicably sets forth his appellate issues and arguments based on the premise that no such evidentiary hearing occurred. We note the transcript of the PCRA evidentiary hearing has been provided to this Court.

[15] In developing his argument, Appellant points to the allegations made in his PCRA petition. Appellant has not alleged that he learned of "new facts" of additional police misconduct since the time he withdrew the claim at the September 30, 2024, evidentiary hearing. Also, he has not alleged PCRA counsel was ineffective in withdrawing the claim during the PCRA evidentiary hearing.

(Pa.Super. 2019) (holding where issue is raised in a motion, but abandoned during the hearing before the lower court, the issue is waived on appeal). Stated differently, Appellant failed to allege and prove that the timeliness exception under Subsection 9545(b)(1)(ii) applies. **See Marshall**, **supra**. Moreover, Appellant has not sought to invoke the timeliness exceptions under Subsections 9545(b)(1)(i) or (iii).[16]  Thus, as to docket number 1062-2020, we affirm the PCRA court's September 30, 2024, order denying Appellant's PCRA petition on the basis it was untimely filed.[17]

Turning to Appellant's appeal at docket number 270-2021, Appellant was sentenced on February 11, 2022, and he filed a timely post-sentence motion on February 16, 2022, which the trial court denied on June 24, 2022. Thereafter, Appellant did not file a timely direct appeal; however, he filed a timely *pro se* PCRA petition seeking the restoration of his direct appeal rights *nunc pro tunc*.  The PCRA court granted this PCRA petition, and within thirty

_____

[16] Appellant's remaining claims on appeal allege the ineffective assistance of guilty plea counsel.  These claims do not invoke the timeliness exceptions under Subsection 9545(b)(1).  **See Commonwealth v. Howard**, 788 A.2d 351 (Pa. 2002).

[17] Given the length of Appellant's sentence for docket number 1062-2020 (*i.e.,* time served to six months in prison), it is unclear whether Appellant is currently serving a sentence of imprisonment, probation, or parole for the conviction. **See** 42 Pa.C.S.A. § 9543(a)(1)(i).  Thus, it is unclear whether Appellant is eligible for PCRA relief.  **See id.**  However, given our holding *supra*, we need not address the eligibility issue further.

days, Appellant filed a direct appeal *nunc pro tunc* from his February 11, 2022, judgment of sentence.

On December 19, 2023, this Court affirmed Appellant's judgment of sentence at docket number 270-2021, and Appellant did not file a petition for allowance of appeal with our Supreme Court. Thus, Appellant's judgment of sentence became final thirty days later, on January 18, 2024, when the time for filing a petition for allowance of appeal expired. *See* Pa.R.A.P. 1113; 42 Pa.C.S.A. § 9545(b)(3).

As such, Appellant had until approximately January 18, 2025, to file a timely PCRA petition. On January 22, 2024, Appellant filed his *pro se* PCRA petition (now considered his first),[18] and, thus, it is timely. Accordingly, we shall proceed to examine the appellate issues presented by Appellant as to docket number 270-2021.

In doing so, we preliminarily note that, in his "Statement of the Questions Involved," Appellant has phrased his issues in terms of the PCRA court erring in denying his PCRA petition without holding an evidentiary hearing. Further, in the argument portion of his brief, he suggests he is entitled to a PCRA evidentiary hearing.

---

[18] We note that, when a PCRA petitioner's direct appeal rights are reinstated *nunc pro tunc* via a timely PCRA petition, a subsequent PCRA petition is considered a first PCRA petition for timeliness and review purposes. *See Commonwealth v. Karanicolas*, 836 A.2d 940 (Pa.Super. 2003).

However, as indicated *supra*, to the extent Appellant asserts the PCRA court denied his PCRA petition at docket number 270-2021 without holding an evidentiary hearing, he is factually mistaken. Specifically, on September 30, 2024, the PCRA court held a full evidentiary hearing in accordance with the PCRA, and the transcript from the hearing has been provided to this Court. Thus, we refer to the September 30, 2024, hearing in reviewing Appellant's claims.

Initially, Appellant claims he has after-discovered evidence that Detective "Hunt had a pattern or habit of violating departmental rules." Appellant's Brief at 17. He avers that "[b]ut for Detective Hunt's prospective false testimony and inadequate supervision there was no basis for a pretextual traffic stop of Appellant." *Id.* He avers that he did not litigate a suppression motion, and decided to plead guilty, because he did not know about Detective Hunt's pattern of misconduct. *Id.* Therefore, Appellant claims he is entitled to withdraw his guilty plea and proceed to trial.

As the Commonwealth notes on appeal, and as discussed *infra*, Appellant specifically withdrew his claim of corruption/misconduct during the September 30, 2024, PCRA evidentiary hearing.[19] Since Appellant abandoned

_____

[19] In developing his argument, Appellant points to the allegations he made in his PCRA petition. Appellant has not alleged that he learned of "new evidence" of additional police misconduct since the time he withdrew the claim at the September 30, 2024, evidentiary hearing. Also, he has not alleged that PCRA counsel was ineffective in withdrawing the issue during the PCRA evidentiary hearing.

his claim of after-discovered evidence as to Detective Hunt's alleged history of misconduct, we conclude the claim has been waived for appeal purposes, and we decline to address it further. *See* Pa.R.A.P. 302(a); *Leaner*, *supra*.

Appellant's remaining claims allege the ineffective assistance of guilty plea counsel. Specifically, Appellant alleges guilty plea counsel (1) failed to advise Appellant of the applicable sentencing guidelines for the offense of possession of firearm prohibited, 18 Pa.C.S.A. § 6105(a)(1); (2) failed to discuss with Appellant the strategy of consolidating all cases for sentencing pursuant to Pa.R.Crim.P. 701; and (3) failed to file a post-sentence motion to withdraw Appellant's guilty plea.

In reviewing Appellant's ineffective assistance of counsel claims, we are mindful that, since there is a presumption counsel provided effective representation, the defendant bears the burden of proving ineffectiveness. ***Commonwealth v. Ali***, 10 A.3d 282 (Pa. 2010). To prevail on an ineffective assistance claim, a defendant must establish "(1) [the] underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his [client's] interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different." ***Id.*** at 291 (citations omitted). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. ***Id.*** Notably, "[c]ounsel cannot be deemed

ineffective for failing to raise a meritless claim." **Commonwealth v. Johnson**, 139 A.3d 1257, 1272 (Pa. 2016) (citation omitted).

> A criminal defendant has the right to effective counsel during a plea process as well as during trial. Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief…if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

**Commonwealth v. Moser**, 921 A.2d 526, 531 (Pa.Super. 2007) (quotations and quotation marks omitted). **See Commonwealth v. Kersteter**, 877 A.2d 466, 467 (Pa.Super. 2005) (holding a PCRA petitioner will be eligible to withdraw his plea if he establishes ineffective assistance of counsel caused the petitioner to enter an involuntary guilty plea, or the guilty plea was unlawfully induced, and the petitioner is innocent).

In the case *sub judice*, Appellant first contends his guilty plea was involuntarily and unknowingly entered since guilty plea counsel failed to advise him of the applicable sentencing guidelines for the offense of possession of firearm prohibited, 18 Pa.C.S.A. § 6105(a)(1).

It is well-settled that "a guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." **Commonwealth v. Carter**, 464 A.2d 1327, 1334 (Pa.Super. 1983) (citation omitted). However, "[o]ur law presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden of doing otherwise."

*Commonwealth v.* **Rush**, 909 A.2d 805, 808 (Pa.Super. 2006). "Where the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established." *Id.*

In the case *sub judice*, in finding no arguable merit to Appellant's claim, the PCRA court indicated it found credible guilty plea counsel's testimony that he advised Appellant of the applicable sentencing guidelines. N.T., 9/30/24, at 74. We find no error or abuse of discretion in this regard. *See* ***Commonwealth v. Spotz***, 18 A.3d 244 (Pa. 2011) (holding that, following a PCRA evidentiary hearing, credibility determinations are within the province of the PCRA court, and when such credibility determinations are supported by the record, they are binding on the appellate courts).

Specifically, during the PCRA evidentiary hearing, counsel noted "the VUFA guideline for this case, because it was stated during the guilty plea, were 60 to 70 months, plus or minus 12 months[.]" *Id.* at 17. PCRA counsel asked guilty plea counsel if the sentencing guidelines were explained to Appellant before he entered his guilty plea, and guilty plea counsel answered, "Of course." *Id.* He noted he also explained to Appellant that "the bottom end of the guidelines would be five to 10 years." *Id.* He additionally noted he explained to Appellant that the offer made by the Commonwealth in the "smart room" was "a year below the bottom of the guidelines." *Id.* That is, he testified he fully explained to Appellant that the offer made by the

Commonwealth was "below the bottom range of the guidelines and in the fully mitigated range of the guidelines for VUFA 6105[.]" *Id.* at 23.

Based on the aforementioned, we agree with the PCRA court that Appellant failed to demonstrate his underlying claim has arguable merit. That is, based on guilty plea counsel's testimony, which the PCRA court found credible, guilty plea counsel thoroughly discussed the applicable sentencing guidelines with Appellant before he entered his open guilty plea to the firearm offense at docket number 270-2021. Since the record supports the PCRA court's credibility determination, we are bound by the PCRA court's determination. *See Commonwealth v. Johnson*, 966 A.2d 523, 539 (Pa. 2009) ("A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts.") (citation omitted)).

Appellant next contends his guilty plea was involuntarily and unknowingly entered since guilty plea counsel failed to discuss with him the strategy of consolidating all outstanding cases for sentencing pursuant to Pa.R.Crim.P. 701.[20] Appellant claims that, had he known counsel was

---

[20] Pennsylvania Rule of Criminal Procedure 701 provides the following:
  **Rule 701. Pleas of Guilty to Multiple Offense.**
  (A) Before the imposition of sentence, the defendant may plead guilty to other offenses that the defendant committed within the jurisdiction of the sentencing court.
  (B) When such pleas are accepted, the court shall sentence the defendant for all the offenses.
Pa.R.Crim.P. 701 (bold in original).

attempting to consolidate all cases for sentencing, he would not have pled guilty to the firearm offense.

In the case *sub judice*, in finding no arguable merit to Appellant's claim, the PCRA court indicated it found credible guilty plea counsel's testimony that he discussed consolidation of the cases for sentencing purposes with Appellant. N.T., 9/30/24, at 73-75. We find no error or abuse of discretion in this regard. **See Spotz**, **supra**.

Specifically, during the PCRA evidentiary hearing, guilty plea counsel indicated Appellant's cases at docket numbers 1062-2020 and 270-2021 were assigned to Judge Convington; however, Appellant had two VOP cases, which were assigned to Judge Campbell. He testified he had a "great concern" that Judge Campbell would "hit Appellant hard" as to his pending VOP cases. N.T., 9/30/24, at 18. Guilty plea counsel testified he believed that, if the VOP cases and firearm case were dealt with at one proceeding, Appellant would get a more lenient aggregate sentence. *Id.* at 20. Guilty plea counsel testified he discussed this strategy with Appellant. *Id.*

Specifically, he testified that he discussed the idea of consolidating sentencing on four cases (the two VOP cases, the case at docket number 1062-2020, and the case at docket number 270-2021), so that Judge Covington would sentence Appellant at one hearing. *Id.* Guilty plea counsel testified he also discussed with Appellant the possibility of consolidating the four cases before Judge Campbell. *Id.* However, in the end, after "specific

conversations with [Appellant] and his family,…the strategy was to get Judge Covington to take the VOPs from Judge Campbell." *Id.* at 19

Accordingly, when Appellant appeared before Judge Convington for the proceedings at docket number 270-2021, he asked Judge Convington if she would accept Appellant's VOP cases, and she said, "Absolutely." *Id.* However, guilty plea counsel testified that, thereafter, Judge Campbell declined to reassign the VOP cases to Judge Covington. *Id.* Thus, guilty plea counsel testified he tried to "achieve consolidation" before Judge Covington, but "Judge Campbell was not having it."[21] *Id.* at 23.

Based on the aforementioned, we agree with the PCRA court that Appellant failed to demonstrate his underlying claim has arguable merit. That is, based on guilty plea counsel's testimony, which the PCRA court found credible, guilty plea counsel thoroughly discussed the strategy of consolidating cases for purposes of sentencing with Appellant before he entered his open guilty plea to the firearm offense at docket number 270-2021. *See Spotz*, *supra* (holding the PCRA court, as the fact finder at a PCRA hearing, is in the best position to evaluate witness credibility and determine the facts).

Appellant next contends guilty plea counsel was ineffective in failing to file a post-sentence motion to withdraw his guilty plea at docket number 270-2021. Specifically, pointing to the assertions that he made in his January 22,

_____

[21] As indicated *supra*, guilty plea counsel achieved consolidation for sentencing purposes as to docket numbers 1062-2020 and 270-2021.

2024, *pro se* PCRA petition, Appellant notes he was dissatisfied with his sentence at docket number 270-2021, and, thus, he wanted to withdraw his guilty plea. *See* Appellant's Brief at 18 (citing Appellant's PCRA petition, filed 1/22/24, at 2, 7). He avers that, despite his repeated requests, guilty plea counsel failed to file a post-sentence motion to withdraw his guilty plea.

In the case *sub judice*, in finding no arguable merit to Appellant's claim, the PCRA court indicated it found credible guilty plea counsel's testimony that Appellant never requested that he file a motion to withdraw his guilty plea. N.T., 9/30/24, at 73-75. We find no error or abuse of discretion in this regard. *See Spotz*, *supra*.

It is well-settled that counsel will not be deemed ineffective for failing to file post-sentence motions where the defendant did not request that counsel file a post-sentence motion. *See Commonwealth v. Cook*, 547 A.2d 406, 408 (Pa.Super. 1988) (explaining that, "[i]n the absence of a request to file post-trial motions, counsel will not be deemed ineffective for failing to file the same"). Moreover, "[c]ounsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Davis*, 262 A.3d 589, 596 (Pa.Super. 2021) (citation omitted).

Here, during the evidentiary hearing, guilty plea counsel testified that he did not file a motion to withdraw Appellant's guilty plea because "he wasn't asked to." N.T., 9/30/24, at 15. He testified that, had Appellant asked him to do so, he would have filed a motion to withdraw his guilty plea. *Id.* at 34.

The PCRA court was free to accept guilty plea counsel's testimony, and, therefore, the record supports the PCRA court's finding that trial counsel could not be deemed ineffective for failing to file a post-sentence motion. **See Cook**, **supra**. That is, the record supports the PCRA court's findings and credibility determinations, which merit deference. **See Johnson**, **supra**.

Additionally, we note that, at the conclusion of the PCRA hearing, the PCRA court indicated the following:

> Just for further information, on the record, the [PCRA] court finds that [Appellant] was fully aware when he entered into the open guilty plea before the [trial] court. The transcript and record are clear that he was appropriately colloquied by the [trial] court in the presence of counsel. [The trial court] inquired…if he had discussed the issues of the open plea as far as entering into an open plea at the bar of court with counsel.

N.T., 9/30/24, at 74-75.

Ultimately, the PCRA court found Appellant failed to present credible evidence suggesting that his plea was anything but knowing, voluntary, and intelligent. The plea colloquy was thorough and complete. Appellant stated under oath that he understood the nature of the charges, the maximum possible penalties, and the rights he was waiving. N.T., 12/10/21, at 1-8. He further affirmed that guilty plea counsel explained his plea, and no one threatened or forced him to plead guilty. **Id.**

We conclude the PCRA court properly found Appellant was not entitled to relief on his ineffective assistance of guilty plea counsel claim. Appellant is bound by the statements, which he made under oath. **Commonwealth v.**

**Yeomans**, 24 A.3d 1044 (Pa.Super. 2011). While Appellant may be displeased with the sentence imposed following his open guilty plea, we note a defendant need not be pleased with the outcome of his decision to plead guilty. **See Commonwealth v. Anderson**, 995 A.2d 1184 (Pa.Super. 2010). "All that is required is that [his] decision to plead guilty be knowingly, voluntarily, and intelligently made." **Id.** at 1192.

In the case *sub judice*, we agree with the PCRA court that the record reveals Appellant entered his guilty plea knowingly, voluntarily, and intelligently. Consequently, there is no arguable merit to the underlying claim, and counsel cannot be deemed ineffective. **See Johnson**, **supra**.

For all of the foregoing reasons, we conclude Appellant's PCRA petition filed at lower court docket number 1062-2020 is untimely. Further, although Appellant's PCRA petition was timely filed at lower court docket number 270-2021, we conclude Appellant is not entitled to relief on his claims of after-discovered evidence and ineffective assistance of guilty plea counsel. Thus, we affirm the PCRA court's September 30, 2024, order denying his PCRA petitions at both docket numbers.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>8/22/2025</u>

J-S27041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                    :  PENNSYLVANIA
                                    :
            v.                    :
                                    :
                                    :
DASHEEM M. FERRON               :
                                    :
            Appellant          :  No. 2953 EDA 2024

Appeal from the PCRA Order Entered September 30, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001062-2020

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                    :  PENNSYLVANIA
                                    :
            v.                    :
                                    :
                                    :
DASHEEM FERRON                :
                                    :
            Appellant          :  No. 2954 EDA 2024

Appeal from the PCRA Order Entered September 30, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000270-2021

BEFORE:  STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:         **FILED AUGUST 22, 2025**

      Appellant, Dasheem M. Ferron,[1] appeals from the September 30, 2024,

order entered in the Court of Common Pleas of Philadelphia County dismissing

_____

[*] Former Justice specially assigned to the Superior Court.
[1] We acknowledge that, for lower court docket number CP-51-CR-0000270-2021, the lower court lists Defendant/Appellant as "Dasheem Ferron" without

*(Footnote Continued Next Page)*

his first petition filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9545, following an evidentiary hearing, at lower court docket numbers CP-51-CR-0001062-2020 ("1062-2020") and CP-51-CR-0000270-2021 ("270-2021"). After our careful review, we affirm.

The relevant facts and procedural history are as follows: At lower court docket number 1062-2020, on February 10, 2020, the Commonwealth filed an Information charging Appellant with manufacture, delivery, or possession with the intent to manufacture or deliver a controlled substance ("PWID"), 35 P.S. § 780-113(a)(30), as well as possession of a controlled substance, 35 P.S. § 780-113(a)(16), in connection with an incident occurring on December 14, 2019. Represented by counsel,[2] on February 11, 2022, Appellant entered an open guilty plea to the charge of PWID at docket number 1062-2020.[3]

Specifically, following a lengthy colloquy, Appellant admitted that, on December 14, 2019, undercover Philadelphia police officers observed him conducting two drug transactions while he was standing on a corner. N.T., 2/11/22, at 13-15. As Appellant reached into a nearby blue Chevrolet, the

_____

reference to a middle initial whereas the middle initial "M." is referenced in lower court docket number CP-51-CR-0001062-2020. We continue to use the same captions as those used in the lower court, and note that, hereafter, Mr. Ferron is referred to as "Appellant."

[2] Appellant entered guilty pleas at docket numbers 1062-2020 and 270-2021. Stephen P. Patrizio, Esquire, represented Appellant during the guilty plea and sentencing hearings for both docket numbers.

[3] The possession charge under Subsection 780-113(a)(16) was *nol prossed*.

police approached him. *Id.* The police discovered three jars of marijuana on Appellant's person, as well as forty jars of marijuana on the front seat of the blue Chevrolet. *Id.* The total weight of the marijuana was twenty-six grams. *Id.* at 15.

After the trial court accepted Appellant's guilty plea at docket number 1062-2020, the matter proceeded immediately to a sentencing hearing, at which the trial court acknowledged it had reviewed a presentence investigation report. The trial court sentenced Appellant to time served to six months in prison. *Id.* at 42. Appellant was given credit for time served and paroled immediately. On February 16, 2022, Appellant filed a timely counseled motion for reconsideration of his sentence, which the trial court denied on June 24, 2022. Appellant did not file a direct appeal.

Meanwhile, at lower court docket number 270-2021, on February 5, 2021, the Commonwealth filed an Information charging Appellant with numerous firearm offenses in connection with an incident occurring on April 9, 2020. Represented by counsel, on December 10, 2021, Appellant entered an open guilty plea to the charge of possession of firearm prohibited, 18 Pa.C.S.A. § 6105(a)(1).[4]

Specifically, following a lengthy colloquy, Appellant admitted that, on April 9, 2020, Philadelphia police officers observed a black Chevrolet fail to

_____

[4] The remaining firearm offenses were *nol prossed*.

- 3 -

stop at a stop sign. N.T., 12/10/21, at 11. The police stopped the black Chevrolet and found Appellant in the driver's seat. **Id.** The police observed the handle of a firearm sticking out of Appellant's right front jacket pocket, and they seized the handgun. **Id.** at 12. Appellant did not have a permit to carry a firearm. **Id.** Also, since he had a previous conviction, he was ineligible to possess a firearm.[5] **Id.**

Appellant's sentence at lower court docket number 270-2021 was deferred until February 11, 2022. Thus, in addition to being sentenced for his conviction at docket number 1062-2020 on February 11, 2022, as indicated *supra*, Appellant was also sentenced for his conviction at docket number 270-2021 on February 11, 2022. Regarding the firearm offense at docket number 270-2021, the trial court sentenced Appellant to five years to ten years in prison with credit for time served. On February 16, 2022, Appellant filed a timely counseled motion for reconsideration of his sentence, which the trial court denied on June 24, 2022. Appellant did not file a timely notice of appeal.

On or about September 20, 2022, Appellant filed a timely *pro se* PCRA petition at solely docket number 270-2021 seeking the restoration of his direct appeal rights *nunc pro tunc* due to the ineffective assistance of trial counsel.

---

[5] In connection with offenses occurring in 2014 and 2017, Appellant was convicted of PWID in two separate cases, thus making him ineligible to possess a firearm. **See** 18 Pa.C.S.A. § 6105(c)(2). Further, he was on probation for these PWID cases when he committed the offenses at lower court docket numbers 1062-2020 and 270-2021.

The PCRA court appointed counsel, and following the filing of an amended PCRA petition, the PCRA court granted Appellant relief. Specifically, the PCRA court reinstated Appellant's direct appeal rights *nunc pro tunc* solely for docket number 270-2021. Appellant then filed a timely appeal to this Court,[6] and by memorandum filed on December 19, 2023, we affirmed Appellant's judgment of sentence for lower court docket number 270-2021. ***See Commonwealth v. Ferron***, No. 257 EDA 2023 (Pa.Super. filed 12/19/23) (unpublished memorandum). Appellant did not file a petition for allowance of appeal with our Supreme Court.

On or about January 22, 2024, regarding docket number 270-2021, Appellant filed a *pro se* PCRA petition.[7] At this time, Appellant did not file a *pro se* or counseled PCRA petition at docket number 1062-2020.

On April 22, 2024, Stephen O'Hanlon, Esquire, entered his appearance at both lower court docket numbers. Thereafter, at both docket numbers,

_____

[6] Appellant was represented by new counsel, Peter Erdely, Esquire, on direct appeal. Therein, Appellant presented several challenges to the discretionary aspects of his sentence of five years to ten years in prison for the firearm offense.

[7] In his January 22, 2024, *pro se* PCRA petition at docket number 270-2021, Appellant claimed guilty plea counsel was ineffective in failing to consult with him before he entered his guilty plea, failing to discuss the relevant sentencing guidelines, and failing to file a requested post-sentence motion to withdraw his guilty plea.

PCRA counsel filed an identical PCRA petition on June 10, 2024,[8] as well an identical amended petition on June 27, 2024, listing both docket numbers in the caption.[9] On September 19, 2024, the Commonwealth filed an answer at both docket numbers.

On September 30, 2024, the PCRA court held an evidentiary PCRA hearing as to both docket numbers. At the commencement of the PCRA hearing, Attorney O'Hanlon ("PCRA counsel") indicated that Appellant was raising claims of ineffective assistance of Attorney Patrizio ("guilty plea counsel"). Specifically, he averred that guilty plea counsel was ineffective in

_____

[8] In the June 10, 2024, counseled PCRA petition, Appellant averred he had newly discovered facts for purposes of invoking a PCRA timeliness exception, as well as meeting the requirements of after-discovered evidence, in relation to Detective Rodney Hunt. Specifically, he averred he had new evidence of police corruption/misconduct.

[9] In the June 27, 2024, amended counseled PCRA petition, Appellant sought an evidentiary PCRA hearing and contended he was entitled to withdraw his guilty pleas at both lower court docket numbers due to newly discovered facts and/or after-discovered evidence. He claimed he had new evidence indicating that Detective Hunt has a pattern of violating departmental rules. He contended he "did not know of the full details of Detective Hunt's habitual background of misconduct and involvement in [Appellant's] case, including initiating a pretextual traffic stop and illegal search and supervising and instructing the other officers involved, Officer Edward Keppol and Joshua Kling." Appellant's Amended PCRA Petition, filed 6/27/24, at 12. Appellant asserted he was not informed of Detective Hunt's habitual misconduct until after he entered his guilty pleas, and the information would have provided a valid basis for viable suppression motions. *Id.*
Moreover, as to his guilty plea at docket number 270-2021, he claimed guilty plea counsel was ineffective in failing to advise Appellant of the sentencing guidelines, failing to inform him that his firearm conviction could have been consolidated with other convictions for sentencing purposes, and failing to file a motion to withdraw his plea to the firearm offense.

failing to discuss the sentencing guidelines for a firearm offense with Appellant, failing to disclose the Commonwealth had offered a sentence of four years to eight years in prison in exchange for Appellant's guilty plea to the firearm offense, failing to discuss the possibility of consolidating cases for sentencing, and failing to file a post-sentence motion to withdraw his guilty plea for the firearm offense. N.T., 9/30/24, at 7.

PCRA counsel specifically advised the PCRA court that Appellant was withdrawing his claims of newly discovered facts and/or after-discovered evidence in relation to alleged police misconduct, particularly as to Detective Hunt. *Id.* at 6, 8. In this vein, PCRA counsel noted that "Detective Hunt was not on the scene; he just processed the job at the detective division. Therefore, his [alleged] recent misconduct would not be relevant to any misconduct associated with [Appellant's] case." *Id.* at 8. The PCRA court asked PCRA counsel, "So, you're withdrawing the claim of police officer misconduct?" *Id.* PCRA counsel responded, "Yes." *Id.*

Appellant then called guilty plea counsel to testify. On direct examination, PCRA counsel asked guilty plea counsel if he remembered being in a "smart room" when the Commonwealth conveyed an offer of four years to eight years in prison as to the firearm offense. *Id.* at 10. Guilty plea counsel responded, "Yes." *Id.* PCRA counsel then asked guilty plea counsel if this offer was conveyed to Appellant, and guilty plea counsel responded, "Absolutely." *Id.* He clarified that he conveyed it "verbally, many times." *Id.*

Guilty plea counsel noted Appellant informed him that, during the stop of his vehicle in the case resulting in the firearm charges (docket number 270-2021), the police were not wearing body cameras, so Appellant asked him to file a suppression motion. *Id.* at 11-12. However, the police produced a video of the stop, and guilty plea counsel showed it to Appellant. *Id.* Guilty plea counsel advised Appellant the video was "pretty damaging," and he recommended Appellant neither litigate a motion to suppress nor proceed to trial. *Id.* at 12. Guilty plea counsel testified he then began negotiations with the Commonwealth. *Id.*

Guilty plea counsel testified he did not file a motion to withdraw Appellant's guilty plea in either case because he "wasn't asked to." *Id.* at 15. He denied that he informed either Appellant or Appellant's stepfather that he was ineffective in the handling of Appellant's cases. *Id.* Guilty plea counsel testified that, in his opinion, he was not ineffective. *Id.*

Regarding the applicable sentencing guidelines for the firearm offense at docket number 270-2021, guilty plea counsel acknowledged his awareness that the "the VUFA[10] guideline for this case, because it was stated during the guilty plea, were 60 to 70 months, plus or minus 12 months[.]" *Id.* at 17 (footnote added). PCRA counsel asked guilty plea counsel if the sentencing guidelines were explained to Appellant before he entered his guilty plea, and

_____

[10] "VUFA" stands for violation of the Uniform Firearms Act, 18 Pa.C.S.A. §§ 6101-6128.

guilty plea counsel answered, "Of course." *Id.* He noted he also explained to Appellant that "the bottom end of the guidelines would be five to 10 years." *Id.* He additionally noted he explained to Appellant that the offer made by the Commonwealth in the "smart room" was "a year below the bottom of the guidelines." *Id.* That is, he testified he fully explained to Appellant that the offer made by the Commonwealth was "below the bottom range of the guidelines and in the fully mitigated range of the guidelines for VUFA 6105[.]" *Id.* at 23.

Guilty plea counsel testified Appellant was not interested in the plea offer from the Commonwealth because Appellant "believed that this was a case that should be time served or a county sentence." *Id.* at 18. He specifically testified Appellant rejected the Commonwealth's offer of four to eight years in prison for the firearm offense. *Id.* at 22.

Guilty plea counsel additionally testified that he had a "great concern" in this case because Appellant had "two pending VOPs[11] before" the Honorable Judge Campbell. *Id.* at 18 (footnote added). Guilty plea counsel was concerned Judge Campbell would "hit Appellant hard," so he tried to get the VOP cases assigned to the Honorable Judge Covington, who was the trial court judge scheduled for Appellant's guilty plea hearing at docket number 270-2021. *Id.* at 19.

_____

[11] Here, we recognize "VOP" refers to "violation of probation."

Guilty plea counsel testified he believed that, if the VOP cases and firearm case were dealt with at one proceeding, Appellant would get a more lenient aggregate sentence. *Id.* at 20. Guilty plea counsel testified he discussed this strategy with Appellant. *Id.* Specifically, he testified that he discussed the idea of consolidating sentencing on four cases (the two VOP cases, the case at docket number 1062-2020, and the case at docket number 270-2021), so that Judge Covington would sentence Appellant at one hearing. *Id.* Guilty plea counsel testified he also discussed with Appellant the possibility of consolidating the four cases before Judge Campbell. *Id.* However, in the end, after "specific conversations with [Appellant] and his family,…the strategy was to get Judge Covington to take the VOPs from Judge Campbell." *Id.* at 19.

Guilty plea counsel testified that, when Appellant appeared before Judge Covington to enter his guilty plea at docket number 270-2021, he asked Judge Covington if she would take the VOP cases, and she said, "Absolutely." *Id.* Guilty plea counsel testified he was "tickled to death" by this; however, thereafter, Judge Campbell declined to reassign the VOP cases to Judge Covington. *Id.* Guilty plea counsel testified he tried to "achieve consolidation" before Judge Covington, but "Judge Campbell was not having it." *Id.* at 23.

Guilty plea counsel noted he was disappointed with the sentence imposed by Judge Covington for the firearm offense at docket number 270-2021. *Id.* at 24. He noted that, given the abundance of mitigation, he

believed Appellant would receive a sentence well below that which was imposed by Judge Covington. *Id.* He also noted that, in the VOP cases, Judge Campbell imposed sentences consecutive to the sentence Appellant received at docket number 270-2021. *Id.*

On cross-examination, guilty plea counsel testified that he had better communication with Appellant than he had with many of his other clients. *Id.* at 27. He noted he had many phone conversations with him. *Id.* Guilty plea counsel confirmed he sought consolidation of Appellant's cases before Judge Covington. *Id.* at 30-31. He testified he "wanted to consolidate before Judge Covington because [he] thought [he] would get a…fair resolution." *Id.* at 34. Guilty plea counsel testified he could not remember if his conversation with Judge Convington regarding consolidation was "on the record," but he "vividly" remembered the conversation. *Id.*

Guilty plea counsel reiterated that, if Appellant had asked, he would have filed a motion to withdraw his guilty plea. *Id.* He noted he made no promises to Appellant. *Id.*

Malik Wilson, who is Appellant's stepfather, testified that, after Appellant was sentenced on February 11, 2022, guilty plea counsel informed him that he "didn't live up to his standards in representing [Appellant]." *Id.* at 39. Mr. Wilson indicated he participated in three-way phone calls with Appellant and guilty plea counsel "four or five" times. *Id.* at 40. He testified he never heard guilty plea counsel discuss sentencing guidelines or consolidation; however,

he admitted he heard guilty plea counsel indicate he was looking to have all the cases heard before a "better judge." *Id.* at 41.

Appellant testified guilty plea counsel never visited him, and he had difficulty getting guilty plea counsel to answer the telephone. *Id.* at 48. He acknowledged he spoke to guilty plea counsel during three-way calls involving his stepfather. *Id.* He testified he asked guilty plea counsel to set up video calls; however, guilty plea counsel declined. *Id.*

Regarding the Commonwealth's "smart room" offer, Appellant admitted that guilty plea counsel told him about the offer. *Id.* at 49. Appellant specifically admitted that guilty plea counsel told him the offer was for four to eight years in prison for the firearm case, and guilty plea counsel advised him to take the offer. *Id.* However, Appellant testified guilty plea counsel "never told me that the DA was talking about consolidating[.]" *Id.* He testified that any discussions about consolidating were done "behind his back," and if he had known about the discussions, he "wouldn't have taken a guilty plea for a five to ten minimum." *Id.*

PCRA counsel asked Appellant whether guilty plea counsel "advised [him] that the VUFA 6105…guidelines were 60 to 70 months plus or minus 12, and that is five years….That would be five to six-and-a-half years at the bottom end plus or minus 12 months?" *Id.* at 50. Appellant responded that he "never even heard of VUFA until [he] came up state and filed a PCRA. It

was never brought up to [him], no guidelines or anything. [He] never heard of 6105 VUFA." ***Id.***

Appellant admitted that, after the police produced a video of the vehicle stop related to the charges at docket number 270-2021, he and guilty plea counsel decided "he wouldn't be able to beat the case. [The] agreement was for [counsel] to get [him] a good deal." ***Id.*** at 51. Appellant claimed that he, as opposed to counsel, asked Judge Covington to sentence him on all of his cases, including the VOP cases. ***Id.*** at 52. Appellant testified guilty plea counsel never discussed any kind of case law associated with consolidation. ***Id.*** at 54.

Appellant testified he twice asked guilty plea counsel to file a motion to withdraw his guilty plea after he was sentenced to five years to ten years in prison. ***Id.*** Appellant testified that he told counsel: "Withdraw the guilty plea, I don't want the five to 10. They offered me four to eight." ***Id.*** at 53. Appellant claimed that, after the February 11, 2022, sentencing hearing, guilty plea counsel "hid from [him]." ***Id.*** He noted that he received a consecutive three to six years in prison from Judge Campbell on the VOP cases. ***Id.*** at 54.

At the conclusion of the evidentiary hearing, by order entered on September 30, 2024, the PCRA court denied Appellant's PCRA petitions at both docket numbers.

On October 29, 2024, Appellant filed timely separate *pro se* notices of appeal at both docket numbers. Attorney O'Hanlon withdrew his appearance,

and new counsel, Scott Sigman, Esquire, entered his appearance on behalf of Appellant. This Court *sua sponte* consolidated the notices of appeal. All Pa.R.A.P. 1925 requirements have been adequately met.

On appeal, Appellant sets forth the following issues in his "Statement of the Questions Involved" (verbatim):

1. Whether the lower court erred in denying [Appellant's] Petition for Post-Conviction Collateral Relief pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9542-46, by Court Order of September 30, 2024, without affording him an evidentiary hearing since [Appellant's] conviction and sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place?

2. Whether the lower court erred in denying [Appellant's] Petition for Post-Conviction Collateral Relief pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9542-46, by Court Order of September 30, 2024, without affording him an evidentiary hearing since, under the totality of the circumstances, there are genuine issues concerning material facts and legitimate purposes would be served by such hearing?

3. Whether the lower court erred in denying [Appellant's] Petition for Post-Conviction Collateral Relief pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9542-46, by Court Order of September 30, 2024, without affording him an evidentiary hearing since [Appellant's] petition makes out a *prima facie* case warranting such hearing under the totality of circumstances, since trial counsel provided ineffective assistance that lacked any reasonable basis which prejudiced [Appellant]?

Appellant's Brief at 6-7.

Initially, we note the following:

- 14 -

On appeal from the denial of PCRA relief, our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. The PCRA court's factual determinations are entitled to deference, but its legal determinations are subject to our plenary review.

***Commonwealth v. Nero***, 58 A.3d 802, 805 (Pa.Super. 2012) (quotation marks and quotations omitted).

Before addressing the merits of the issues presented on appeal, we must determine whether we have jurisdiction.

Pennsylvania law makes clear no court has jurisdiction to hear an untimely PCRA petition. The most recent amendments to the PCRA, effective January 16, 1996, provide a PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

***Commonwealth v. Monaco***, 996 A.2d 1076, 1079 (Pa.Super. 2010) (citations omitted).

[There are] three statutory exceptions to the timeliness provisions in the PCRA [that] allow for the very limited circumstances under which the late filing of a petition will be excused. 42 Pa.C.S.A. § 9545(b)(1). To invoke an exception, a petitioner must allege and prove:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

- 15 -

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

*Id.* at 1079-80 (citing 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii)).

Any petition invoking a timeliness exception must be filed within one year of the date the claim could have been presented.[12] 42 Pa.C.S.A. § 9545(b)(2). "We emphasize that it is the petitioner who bears the burden to allege and prove that one of the timeliness exceptions applies." *Commonwealth v. Marshall*, 947 A.2d 714, 719 (Pa. 2008) (citation omitted). Lastly, there is "no generalized equitable exception to the jurisdictional one-year time bar pertaining to post-conviction petitions." *Commonwealth v. Brown*, 943 A.2d 264, 267 (Pa. 2008).

As indicated *supra*, the instant matter involves Appellant's appeals from the September 20, 2024, order denying his PCRA petitions at two separate lower court docket numbers: 1062-2020 and 270-2021. We examine each appeal in turn to determine whether the appeal is properly before us.

Regarding docket number 1062-2020, Appellant was sentenced on February 11, 2022, and he filed a timely post-sentence motion, which the trial

---

[12] On October 24, 2018, the General Assembly amended Section 9545(b)(2) and extended the time for filing a petition from sixty days to one year from the date the claim could have been presented. *See* 2018 Pa.Legis.Serv.Act 2018-146 (S.B. 915), effective December 24, 2018. The amendment applies only to claims arising one year before the effective date of this section, December 24, 2017, or thereafter.

court denied on June 24, 2022. Appellant did not file a direct appeal.[13] Accordingly, his judgment of sentence became final thirty days later, on July 24, 2022, when the time for filing a direct appeal to this Court expired. **See** 42 Pa.C.S.A. § 9545(b)(3); Pa.R.A.P. 903(a). Appellant had one year, until approximately July 24, 2023, to file a timely PCRA petition. **See** 42 Pa.C.S.A. § 9545(b)(1). However, Appellant filed his PCRA petition at docket number 1062-2020 on June 10, 2024, and, consequently, it is facially untimely.

However, this does not end our inquiry as Appellant alleges on appeal that he has met the newly discovered facts exception under Subsection 9545(b)(1)(ii). Specifically, pointing to the assertions he made in his counseled PCRA petition filed on June 10, 2024, as well as the counseled amended PCRA petition on June 27, 2024, Appellant suggests that he pled and proved "there exists newly discovered evidence in relation to Detective Rodney Hunt." Appellant's Brief at 17. He avers that evidence of Detective Hunt's habit of violating departmental rules, including giving false testimony, was not disclosed to him prior to the entry of his guilty plea. Accordingly, he claims he has met the newly discovered facts exception as it relates to docket number 1062-2020. We disagree.

---

[13] Notably, contrary to docket number 270-2021, Appellant's appeal rights were not reinstated *nunc pro tunc* via the PCRA for docket number 1062-2020.

Here, at the commencement of the September 20, 2024, PCRA evidentiary hearing,[14] PCRA counsel advised the PCRA court that Appellant was withdrawing all claims related to the alleged corruption/misconduct of Detective Hunt. N.T., 9/30/24, at 8. Specifically, PCRA counsel stated, "[Detective Hunt's] recent misconduct would not be relevant to any misconduct associated with [Appellant's] case." *Id.* Accordingly, the issue of Detective Hunt's alleged misconduct was neither explored nor further discussed at the PCRA evidentiary hearing, and Appellant offered no evidence related thereto.

Accordingly, inasmuch as Appellant withdrew his claim of newly discovered facts,[15] we conclude the issue is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); ***Commonwealth v. Leaner***, 202 A.3d 749, 765 n.3

_____

[14] In his appellate brief, in the procedural history set forth in the "Statement of the Case," Appellant acknowledges that "[f]ollowing an evidentiary hearing on September 30, 2024, the PCRA [petition] was denied." Appellant's Brief at 9. However, he then inexplicably sets forth his appellate issues and arguments based on the premise that no such evidentiary hearing occurred. We note the transcript of the PCRA evidentiary hearing has been provided to this Court.

[15] In developing his argument, Appellant points to the allegations made in his PCRA petition. Appellant has not alleged that he learned of "new facts" of additional police misconduct since the time he withdrew the claim at the September 30, 2024, evidentiary hearing. Also, he has not alleged PCRA counsel was ineffective in withdrawing the claim during the PCRA evidentiary hearing.

(Pa.Super. 2019) (holding where issue is raised in a motion, but abandoned during the hearing before the lower court, the issue is waived on appeal). Stated differently, Appellant failed to allege and prove that the timeliness exception under Subsection 9545(b)(1)(ii) applies. **See Marshall**, **supra**. Moreover, Appellant has not sought to invoke the timeliness exceptions under Subsections 9545(b)(1)(i) or (iii).[16]  Thus, as to docket number 1062-2020, we affirm the PCRA court's September 30, 2024, order denying Appellant's PCRA petition on the basis it was untimely filed.[17]

Turning to Appellant's appeal at docket number 270-2021, Appellant was sentenced on February 11, 2022, and he filed a timely post-sentence motion on February 16, 2022, which the trial court denied on June 24, 2022. Thereafter, Appellant did not file a timely direct appeal; however, he filed a timely *pro se* PCRA petition seeking the restoration of his direct appeal rights *nunc pro tunc*.  The PCRA court granted this PCRA petition, and within thirty

_____

[16] Appellant's remaining claims on appeal allege the ineffective assistance of guilty plea counsel.  These claims do not invoke the timeliness exceptions under Subsection 9545(b)(1).  **See Commonwealth v. Howard**, 788 A.2d 351 (Pa. 2002).

[17] Given the length of Appellant's sentence for docket number 1062-2020 (*i.e.,* time served to six months in prison), it is unclear whether Appellant is currently serving a sentence of imprisonment, probation, or parole for the conviction. **See** 42 Pa.C.S.A. § 9543(a)(1)(i).  Thus, it is unclear whether Appellant is eligible for PCRA relief.  **See id.**  However, given our holding *supra*, we need not address the eligibility issue further.

- 19 -

days, Appellant filed a direct appeal *nunc pro tunc* from his February 11, 2022, judgment of sentence.

On December 19, 2023, this Court affirmed Appellant's judgment of sentence at docket number 270-2021, and Appellant did not file a petition for allowance of appeal with our Supreme Court. Thus, Appellant's judgment of sentence became final thirty days later, on January 18, 2024, when the time for filing a petition for allowance of appeal expired. **See** Pa.R.A.P. 1113; 42 Pa.C.S.A. § 9545(b)(3).

As such, Appellant had until approximately January 18, 2025, to file a timely PCRA petition. On January 22, 2024, Appellant filed his *pro se* PCRA petition (now considered his first),[18] and, thus, it is timely. Accordingly, we shall proceed to examine the appellate issues presented by Appellant as to docket number 270-2021.

In doing so, we preliminarily note that, in his "Statement of the Questions Involved," Appellant has phrased his issues in terms of the PCRA court erring in denying his PCRA petition without holding an evidentiary hearing. Further, in the argument portion of his brief, he suggests he is entitled to a PCRA evidentiary hearing.

---

[18] We note that, when a PCRA petitioner's direct appeal rights are reinstated *nunc pro tunc* via a timely PCRA petition, a subsequent PCRA petition is considered a first PCRA petition for timeliness and review purposes. **See Commonwealth v. Karanicolas**, 836 A.2d 940 (Pa.Super. 2003).

However, as indicated *supra*, to the extent Appellant asserts the PCRA court denied his PCRA petition at docket number 270-2021 without holding an evidentiary hearing, he is factually mistaken. Specifically, on September 30, 2024, the PCRA court held a full evidentiary hearing in accordance with the PCRA, and the transcript from the hearing has been provided to this Court. Thus, we refer to the September 30, 2024, hearing in reviewing Appellant's claims.

Initially, Appellant claims he has after-discovered evidence that Detective "Hunt had a pattern or habit of violating departmental rules." Appellant's Brief at 17. He avers that "[b]ut for Detective Hunt's prospective false testimony and inadequate supervision there was no basis for a pretextual traffic stop of Appellant." *Id.* He avers that he did not litigate a suppression motion, and decided to plead guilty, because he did not know about Detective Hunt's pattern of misconduct. *Id.* Therefore, Appellant claims he is entitled to withdraw his guilty plea and proceed to trial.

As the Commonwealth notes on appeal, and as discussed *infra*, Appellant specifically withdrew his claim of corruption/misconduct during the September 30, 2024, PCRA evidentiary hearing.[19] Since Appellant abandoned

_____

[19] In developing his argument, Appellant points to the allegations he made in his PCRA petition. Appellant has not alleged that he learned of "new evidence" of additional police misconduct since the time he withdrew the claim at the September 30, 2024, evidentiary hearing. Also, he has not alleged that PCRA counsel was ineffective in withdrawing the issue during the PCRA evidentiary hearing.

his claim of after-discovered evidence as to Detective Hunt's alleged history of misconduct, we conclude the claim has been waived for appeal purposes, and we decline to address it further. **See** Pa.R.A.P. 302(a); **Leaner**, **supra**.

Appellant's remaining claims allege the ineffective assistance of guilty plea counsel. Specifically, Appellant alleges guilty plea counsel (1) failed to advise Appellant of the applicable sentencing guidelines for the offense of possession of firearm prohibited, 18 Pa.C.S.A. § 6105(a)(1); (2) failed to discuss with Appellant the strategy of consolidating all cases for sentencing pursuant to Pa.R.Crim.P. 701; and (3) failed to file a post-sentence motion to withdraw Appellant's guilty plea.

In reviewing Appellant's ineffective assistance of counsel claims, we are mindful that, since there is a presumption counsel provided effective representation, the defendant bears the burden of proving ineffectiveness. **Commonwealth v. Ali**, 10 A.3d 282 (Pa. 2010). To prevail on an ineffective assistance claim, a defendant must establish "(1) [the] underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his [client's] interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different." **Id.** at 291 (citations omitted). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. **Id.** Notably, "[c]ounsel cannot be deemed

ineffective for failing to raise a meritless claim." ***Commonwealth v. Johnson***, 139 A.3d 1257, 1272 (Pa. 2016) (citation omitted).

> A criminal defendant has the right to effective counsel during a plea process as well as during trial. Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief…if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

***Commonwealth v. Moser***, 921 A.2d 526, 531 (Pa.Super. 2007) (quotations and quotation marks omitted). ***See Commonwealth v. Kersteter***, 877 A.2d 466, 467 (Pa.Super. 2005) (holding a PCRA petitioner will be eligible to withdraw his plea if he establishes ineffective assistance of counsel caused the petitioner to enter an involuntary guilty plea, or the guilty plea was unlawfully induced, and the petitioner is innocent).

In the case *sub judice*, Appellant first contends his guilty plea was involuntarily and unknowingly entered since guilty plea counsel failed to advise him of the applicable sentencing guidelines for the offense of possession of firearm prohibited, 18 Pa.C.S.A. § 6105(a)(1).

It is well-settled that "a guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." ***Commonwealth v. Carter***, 464 A.2d 1327, 1334 (Pa.Super. 1983) (citation omitted). However, "[o]ur law presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden of doing otherwise."

*Commonwealth v. Rush*, 909 A.2d 805, 808 (Pa.Super. 2006). "Where the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established." *Id.*

In the case *sub judice*, in finding no arguable merit to Appellant's claim, the PCRA court indicated it found credible guilty plea counsel's testimony that he advised Appellant of the applicable sentencing guidelines. N.T., 9/30/24, at 74. We find no error or abuse of discretion in this regard. *See Commonwealth v. Spotz*, 18 A.3d 244 (Pa. 2011) (holding that, following a PCRA evidentiary hearing, credibility determinations are within the province of the PCRA court, and when such credibility determinations are supported by the record, they are binding on the appellate courts).

Specifically, during the PCRA evidentiary hearing, counsel noted "the VUFA guideline for this case, because it was stated during the guilty plea, were 60 to 70 months, plus or minus 12 months[.]" *Id.* at 17. PCRA counsel asked guilty plea counsel if the sentencing guidelines were explained to Appellant before he entered his guilty plea, and guilty plea counsel answered, "Of course." *Id.* He noted he also explained to Appellant that "the bottom end of the guidelines would be five to 10 years." *Id.* He additionally noted he explained to Appellant that the offer made by the Commonwealth in the "smart room" was "a year below the bottom of the guidelines." *Id.* That is, he testified he fully explained to Appellant that the offer made by the

Commonwealth was "below the bottom range of the guidelines and in the fully mitigated range of the guidelines for VUFA 6105[.]" *Id.* at 23.

Based on the aforementioned, we agree with the PCRA court that Appellant failed to demonstrate his underlying claim has arguable merit. That is, based on guilty plea counsel's testimony, which the PCRA court found credible, guilty plea counsel thoroughly discussed the applicable sentencing guidelines with Appellant before he entered his open guilty plea to the firearm offense at docket number 270-2021. Since the record supports the PCRA court's credibility determination, we are bound by the PCRA court's determination. *See Commonwealth v. Johnson*, 966 A.2d 523, 539 (Pa. 2009) ("A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts.") (citation omitted)).

Appellant next contends his guilty plea was involuntarily and unknowingly entered since guilty plea counsel failed to discuss with him the strategy of consolidating all outstanding cases for sentencing pursuant to Pa.R.Crim.P. 701.[20] Appellant claims that, had he known counsel was

---

[20] Pennsylvania Rule of Criminal Procedure 701 provides the following:
**Rule 701. Pleas of Guilty to Multiple Offense.**
(A) Before the imposition of sentence, the defendant may plead guilty to other offenses that the defendant committed within the jurisdiction of the sentencing court.
(B) When such pleas are accepted, the court shall sentence the defendant for all the offenses.
Pa.R.Crim.P. 701 (bold in original).

attempting to consolidate all cases for sentencing, he would not have pled guilty to the firearm offense.

In the case *sub judice*, in finding no arguable merit to Appellant's claim, the PCRA court indicated it found credible guilty plea counsel's testimony that he discussed consolidation of the cases for sentencing purposes with Appellant. N.T., 9/30/24, at 73-75. We find no error or abuse of discretion in this regard. ***See Spotz***, ***supra***.

Specifically, during the PCRA evidentiary hearing, guilty plea counsel indicated Appellant's cases at docket numbers 1062-2020 and 270-2021 were assigned to Judge Convington; however, Appellant had two VOP cases, which were assigned to Judge Campbell. He testified he had a "great concern" that Judge Campbell would "hit Appellant hard" as to his pending VOP cases. N.T., 9/30/24, at 18. Guilty plea counsel testified he believed that, if the VOP cases and firearm case were dealt with at one proceeding, Appellant would get a more lenient aggregate sentence. ***Id.*** at 20. Guilty plea counsel testified he discussed this strategy with Appellant. ***Id.***

Specifically, he testified that he discussed the idea of consolidating sentencing on four cases (the two VOP cases, the case at docket number 1062-2020, and the case at docket number 270-2021), so that Judge Covington would sentence Appellant at one hearing. ***Id.*** Guilty plea counsel testified he also discussed with Appellant the possibility of consolidating the four cases before Judge Campbell. ***Id.*** However, in the end, after "specific

conversations with [Appellant] and his family,…the strategy was to get Judge Covington to take the VOPs from Judge Campbell." *Id.* at 19

Accordingly, when Appellant appeared before Judge Convington for the proceedings at docket number 270-2021, he asked Judge Convington if she would accept Appellant's VOP cases, and she said, "Absolutely." *Id.* However, guilty plea counsel testified that, thereafter, Judge Campbell declined to reassign the VOP cases to Judge Covington. *Id.* Thus, guilty plea counsel testified he tried to "achieve consolidation" before Judge Covington, but "Judge Campbell was not having it."[21] *Id.* at 23.

Based on the aforementioned, we agree with the PCRA court that Appellant failed to demonstrate his underlying claim has arguable merit. That is, based on guilty plea counsel's testimony, which the PCRA court found credible, guilty plea counsel thoroughly discussed the strategy of consolidating cases for purposes of sentencing with Appellant before he entered his open guilty plea to the firearm offense at docket number 270-2021. *See Spotz*, *supra* (holding the PCRA court, as the fact finder at a PCRA hearing, is in the best position to evaluate witness credibility and determine the facts).

Appellant next contends guilty plea counsel was ineffective in failing to file a post-sentence motion to withdraw his guilty plea at docket number 270-2021. Specifically, pointing to the assertions that he made in his January 22,

---

[21] As indicated *supra*, guilty plea counsel achieved consolidation for sentencing purposes as to docket numbers 1062-2020 and 270-2021.

2024, *pro se* PCRA petition, Appellant notes he was dissatisfied with his sentence at docket number 270-2021, and, thus, he wanted to withdraw his guilty plea. *See* Appellant's Brief at 18 (citing Appellant's PCRA petition, filed 1/22/24, at 2, 7). He avers that, despite his repeated requests, guilty plea counsel failed to file a post-sentence motion to withdraw his guilty plea.

In the case *sub judice*, in finding no arguable merit to Appellant's claim, the PCRA court indicated it found credible guilty plea counsel's testimony that Appellant never requested that he file a motion to withdraw his guilty plea. N.T., 9/30/24, at 73-75. We find no error or abuse of discretion in this regard. *See Spotz*, *supra*.

It is well-settled that counsel will not be deemed ineffective for failing to file post-sentence motions where the defendant did not request that counsel file a post-sentence motion. *See Commonwealth v. Cook*, 547 A.2d 406, 408 (Pa.Super. 1988) (explaining that, "[i]n the absence of a request to file post-trial motions, counsel will not be deemed ineffective for failing to file the same"). Moreover, "[c]ounsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Davis*, 262 A.3d 589, 596 (Pa.Super. 2021) (citation omitted).

Here, during the evidentiary hearing, guilty plea counsel testified that he did not file a motion to withdraw Appellant's guilty plea because "he wasn't asked to." N.T., 9/30/24, at 15. He testified that, had Appellant asked him to do so, he would have filed a motion to withdraw his guilty plea. *Id.* at 34.

The PCRA court was free to accept guilty plea counsel's testimony, and, therefore, the record supports the PCRA court's finding that trial counsel could not be deemed ineffective for failing to file a post-sentence motion. **See Cook**, **supra**. That is, the record supports the PCRA court's findings and credibility determinations, which merit deference. **See Johnson**, **supra**.

Additionally, we note that, at the conclusion of the PCRA hearing, the PCRA court indicated the following:

> Just for further information, on the record, the [PCRA] court finds that [Appellant] was fully aware when he entered into the open guilty plea before the [trial] court. The transcript and record are clear that he was appropriately colloquied by the [trial] court in the presence of counsel. [The trial court] inquired…if he had discussed the issues of the open plea as far as entering into an open plea at the bar of court with counsel.

N.T., 9/30/24, at 74-75.

Ultimately, the PCRA court found Appellant failed to present credible evidence suggesting that his plea was anything but knowing, voluntary, and intelligent. The plea colloquy was thorough and complete. Appellant stated under oath that he understood the nature of the charges, the maximum possible penalties, and the rights he was waiving. N.T., 12/10/21, at 1-8. He further affirmed that guilty plea counsel explained his plea, and no one threatened or forced him to plead guilty. **Id.**

We conclude the PCRA court properly found Appellant was not entitled to relief on his ineffective assistance of guilty plea counsel claim. Appellant is bound by the statements, which he made under oath. **Commonwealth v.**

*Yeomans*, 24 A.3d 1044 (Pa.Super. 2011). While Appellant may be displeased with the sentence imposed following his open guilty plea, we note a defendant need not be pleased with the outcome of his decision to plead guilty. *See Commonwealth v. Anderson*, 995 A.2d 1184 (Pa.Super. 2010). "All that is required is that [his] decision to plead guilty be knowingly, voluntarily, and intelligently made." *Id.* at 1192.

In the case *sub judice*, we agree with the PCRA court that the record reveals Appellant entered his guilty plea knowingly, voluntarily, and intelligently. Consequently, there is no arguable merit to the underlying claim, and counsel cannot be deemed ineffective. *See Johnson*, *supra*.

For all of the foregoing reasons, we conclude Appellant's PCRA petition filed at lower court docket number 1062-2020 is untimely. Further, although Appellant's PCRA petition was timely filed at lower court docket number 270-2021, we conclude Appellant is not entitled to relief on his claims of after-discovered evidence and ineffective assistance of guilty plea counsel. Thus, we affirm the PCRA court's September 30, 2024, order denying his PCRA petitions at both docket numbers.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>8/22/2025</u>

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| DASHEEM M. FERRON | : | |
| Appellant | : | No. 2953 EDA 2024 |

Appeal from the PCRA Order Entered September 30, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001062-2020

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| DASHEEM FERRON | : | |
| Appellant | : | No. 2954 EDA 2024 |

Appeal from the PCRA Order Entered September 30, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000270-2021

BEFORE: STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:              **FILED AUGUST 22, 2025**

Appellant, Dasheem M. Ferron,[1] appeals from the September 30, 2024,

order entered in the Court of Common Pleas of Philadelphia County dismissing

_____

[*] Former Justice specially assigned to the Superior Court.
[1] We acknowledge that, for lower court docket number CP-51-CR-0000270-2021, the lower court lists Defendant/Appellant as "Dasheem Ferron" without
*(Footnote Continued Next Page)*

his first petition filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9545, following an evidentiary hearing, at lower court docket numbers CP-51-CR-0001062-2020 ("1062-2020") and CP-51-CR-0000270-2021 ("270-2021"). After our careful review, we affirm.

The relevant facts and procedural history are as follows: At lower court docket number 1062-2020, on February 10, 2020, the Commonwealth filed an Information charging Appellant with manufacture, delivery, or possession with the intent to manufacture or deliver a controlled substance ("PWID"), 35 P.S. § 780-113(a)(30), as well as possession of a controlled substance, 35 P.S. § 780-113(a)(16), in connection with an incident occurring on December 14, 2019. Represented by counsel,[2] on February 11, 2022, Appellant entered an open guilty plea to the charge of PWID at docket number 1062-2020.[3]

Specifically, following a lengthy colloquy, Appellant admitted that, on December 14, 2019, undercover Philadelphia police officers observed him conducting two drug transactions while he was standing on a corner. N.T., 2/11/22, at 13-15. As Appellant reached into a nearby blue Chevrolet, the

_____

reference to a middle initial whereas the middle initial "M." is referenced in lower court docket number CP-51-CR-0001062-2020. We continue to use the same captions as those used in the lower court, and note that, hereafter, Mr. Ferron is referred to as "Appellant."

[2] Appellant entered guilty pleas at docket numbers 1062-2020 and 270-2021. Stephen P. Patrizio, Esquire, represented Appellant during the guilty plea and sentencing hearings for both docket numbers.

[3] The possession charge under Subsection 780-113(a)(16) was *nol prossed*.

police approached him. *Id.* The police discovered three jars of marijuana on Appellant's person, as well as forty jars of marijuana on the front seat of the blue Chevrolet. *Id.* The total weight of the marijuana was twenty-six grams. *Id.* at 15.

After the trial court accepted Appellant's guilty plea at docket number 1062-2020, the matter proceeded immediately to a sentencing hearing, at which the trial court acknowledged it had reviewed a presentence investigation report. The trial court sentenced Appellant to time served to six months in prison. *Id.* at 42. Appellant was given credit for time served and paroled immediately. On February 16, 2022, Appellant filed a timely counseled motion for reconsideration of his sentence, which the trial court denied on June 24, 2022. Appellant did not file a direct appeal.

Meanwhile, at lower court docket number 270-2021, on February 5, 2021, the Commonwealth filed an Information charging Appellant with numerous firearm offenses in connection with an incident occurring on April 9, 2020. Represented by counsel, on December 10, 2021, Appellant entered an open guilty plea to the charge of possession of firearm prohibited, 18 Pa.C.S.A. § 6105(a)(1).[4]

Specifically, following a lengthy colloquy, Appellant admitted that, on April 9, 2020, Philadelphia police officers observed a black Chevrolet fail to

_____

[4] The remaining firearm offenses were *nol prossed*.

- 3 -

stop at a stop sign. N.T., 12/10/21, at 11. The police stopped the black Chevrolet and found Appellant in the driver's seat. *Id.* The police observed the handle of a firearm sticking out of Appellant's right front jacket pocket, and they seized the handgun. *Id.* at 12. Appellant did not have a permit to carry a firearm. *Id.* Also, since he had a previous conviction, he was ineligible to possess a firearm.[5] *Id.*

Appellant's sentence at lower court docket number 270-2021 was deferred until February 11, 2022. Thus, in addition to being sentenced for his conviction at docket number 1062-2020 on February 11, 2022, as indicated *supra*, Appellant was also sentenced for his conviction at docket number 270-2021 on February 11, 2022. Regarding the firearm offense at docket number 270-2021, the trial court sentenced Appellant to five years to ten years in prison with credit for time served. On February 16, 2022, Appellant filed a timely counseled motion for reconsideration of his sentence, which the trial court denied on June 24, 2022. Appellant did not file a timely notice of appeal.

On or about September 20, 2022, Appellant filed a timely *pro se* PCRA petition at solely docket number 270-2021 seeking the restoration of his direct appeal rights *nunc pro tunc* due to the ineffective assistance of trial counsel.

_____

[5] In connection with offenses occurring in 2014 and 2017, Appellant was convicted of PWID in two separate cases, thus making him ineligible to possess a firearm. *See* 18 Pa.C.S.A. § 6105(c)(2). Further, he was on probation for these PWID cases when he committed the offenses at lower court docket numbers 1062-2020 and 270-2021.

- 4 -

The PCRA court appointed counsel, and following the filing of an amended PCRA petition, the PCRA court granted Appellant relief. Specifically, the PCRA court reinstated Appellant's direct appeal rights *nunc pro tunc* solely for docket number 270-2021. Appellant then filed a timely appeal to this Court,[6] and by memorandum filed on December 19, 2023, we affirmed Appellant's judgment of sentence for lower court docket number 270-2021. ***See Commonwealth v. Ferron***, No. 257 EDA 2023 (Pa.Super. filed 12/19/23) (unpublished memorandum). Appellant did not file a petition for allowance of appeal with our Supreme Court.

On or about January 22, 2024, regarding docket number 270-2021, Appellant filed a *pro se* PCRA petition.[7] At this time, Appellant did not file a *pro se* or counseled PCRA petition at docket number 1062-2020.

On April 22, 2024, Stephen O'Hanlon, Esquire, entered his appearance at both lower court docket numbers. Thereafter, at both docket numbers,

_____

[6] Appellant was represented by new counsel, Peter Erdely, Esquire, on direct appeal. Therein, Appellant presented several challenges to the discretionary aspects of his sentence of five years to ten years in prison for the firearm offense.

[7] In his January 22, 2024, *pro se* PCRA petition at docket number 270-2021, Appellant claimed guilty plea counsel was ineffective in failing to consult with him before he entered his guilty plea, failing to discuss the relevant sentencing guidelines, and failing to file a requested post-sentence motion to withdraw his guilty plea.

PCRA counsel filed an identical PCRA petition on June 10, 2024,[8] as well an identical amended petition on June 27, 2024, listing both docket numbers in the caption.[9] On September 19, 2024, the Commonwealth filed an answer at both docket numbers.

On September 30, 2024, the PCRA court held an evidentiary PCRA hearing as to both docket numbers. At the commencement of the PCRA hearing, Attorney O'Hanlon ("PCRA counsel") indicated that Appellant was raising claims of ineffective assistance of Attorney Patrizio ("guilty plea counsel"). Specifically, he averred that guilty plea counsel was ineffective in

_____

[8] In the June 10, 2024, counseled PCRA petition, Appellant averred he had newly discovered facts for purposes of invoking a PCRA timeliness exception, as well as meeting the requirements of after-discovered evidence, in relation to Detective Rodney Hunt. Specifically, he averred he had new evidence of police corruption/misconduct.

[9] In the June 27, 2024, amended counseled PCRA petition, Appellant sought an evidentiary PCRA hearing and contended he was entitled to withdraw his guilty pleas at both lower court docket numbers due to newly discovered facts and/or after-discovered evidence. He claimed he had new evidence indicating that Detective Hunt has a pattern of violating departmental rules. He contended he "did not know of the full details of Detective Hunt's habitual background of misconduct and involvement in [Appellant's] case, including initiating a pretextual traffic stop and illegal search and supervising and instructing the other officers involved, Officer Edward Keppol and Joshua Kling." Appellant's Amended PCRA Petition, filed 6/27/24, at 12. Appellant asserted he was not informed of Detective Hunt's habitual misconduct until after he entered his guilty pleas, and the information would have provided a valid basis for viable suppression motions. *Id.*

Moreover, as to his guilty plea at docket number 270-2021, he claimed guilty plea counsel was ineffective in failing to advise Appellant of the sentencing guidelines, failing to inform him that his firearm conviction could have been consolidated with other convictions for sentencing purposes, and failing to file a motion to withdraw his plea to the firearm offense.

- 6 -

failing to discuss the sentencing guidelines for a firearm offense with Appellant, failing to disclose the Commonwealth had offered a sentence of four years to eight years in prison in exchange for Appellant's guilty plea to the firearm offense, failing to discuss the possibility of consolidating cases for sentencing, and failing to file a post-sentence motion to withdraw his guilty plea for the firearm offense. N.T., 9/30/24, at 7.

PCRA counsel specifically advised the PCRA court that Appellant was withdrawing his claims of newly discovered facts and/or after-discovered evidence in relation to alleged police misconduct, particularly as to Detective Hunt. *Id.* at 6, 8. In this vein, PCRA counsel noted that "Detective Hunt was not on the scene; he just processed the job at the detective division. Therefore, his [alleged] recent misconduct would not be relevant to any misconduct associated with [Appellant's] case." *Id.* at 8. The PCRA court asked PCRA counsel, "So, you're withdrawing the claim of police officer misconduct?" *Id.* PCRA counsel responded, "Yes." *Id.*

Appellant then called guilty plea counsel to testify. On direct examination, PCRA counsel asked guilty plea counsel if he remembered being in a "smart room" when the Commonwealth conveyed an offer of four years to eight years in prison as to the firearm offense. *Id.* at 10. Guilty plea counsel responded, "Yes." *Id.* PCRA counsel then asked guilty plea counsel if this offer was conveyed to Appellant, and guilty plea counsel responded, "Absolutely." *Id.* He clarified that he conveyed it "verbally, many times." *Id.*

Guilty plea counsel noted Appellant informed him that, during the stop of his vehicle in the case resulting in the firearm charges (docket number 270-2021), the police were not wearing body cameras, so Appellant asked him to file a suppression motion. *Id.* at 11-12. However, the police produced a video of the stop, and guilty plea counsel showed it to Appellant. *Id.* Guilty plea counsel advised Appellant the video was "pretty damaging," and he recommended Appellant neither litigate a motion to suppress nor proceed to trial. *Id.* at 12. Guilty plea counsel testified he then began negotiations with the Commonwealth. *Id.*

Guilty plea counsel testified he did not file a motion to withdraw Appellant's guilty plea in either case because he "wasn't asked to." *Id.* at 15. He denied that he informed either Appellant or Appellant's stepfather that he was ineffective in the handling of Appellant's cases. *Id.* Guilty plea counsel testified that, in his opinion, he was not ineffective. *Id.*

Regarding the applicable sentencing guidelines for the firearm offense at docket number 270-2021, guilty plea counsel acknowledged his awareness that the "the VUFA[10] guideline for this case, because it was stated during the guilty plea, were 60 to 70 months, plus or minus 12 months[.]" *Id.* at 17 (footnote added). PCRA counsel asked guilty plea counsel if the sentencing guidelines were explained to Appellant before he entered his guilty plea, and

_____

[10] "VUFA" stands for violation of the Uniform Firearms Act, 18 Pa.C.S.A. §§ 6101-6128.

- 8 -

guilty plea counsel answered, "Of course." *Id.* He noted he also explained to Appellant that "the bottom end of the guidelines would be five to 10 years." *Id.* He additionally noted he explained to Appellant that the offer made by the Commonwealth in the "smart room" was "a year below the bottom of the guidelines." *Id.* That is, he testified he fully explained to Appellant that the offer made by the Commonwealth was "below the bottom range of the guidelines and in the fully mitigated range of the guidelines for VUFA 6105[.]" *Id.* at 23.

Guilty plea counsel testified Appellant was not interested in the plea offer from the Commonwealth because Appellant "believed that this was a case that should be time served or a county sentence." *Id.* at 18. He specifically testified Appellant rejected the Commonwealth's offer of four to eight years in prison for the firearm offense. *Id.* at 22.

Guilty plea counsel additionally testified that he had a "great concern" in this case because Appellant had "two pending VOPs[11] before" the Honorable Judge Campbell. *Id.* at 18 (footnote added). Guilty plea counsel was concerned Judge Campbell would "hit Appellant hard," so he tried to get the VOP cases assigned to the Honorable Judge Covington, who was the trial court judge scheduled for Appellant's guilty plea hearing at docket number 270-2021. *Id.* at 19.

_____

[11] Here, we recognize "VOP" refers to "violation of probation."

Guilty plea counsel testified he believed that, if the VOP cases and firearm case were dealt with at one proceeding, Appellant would get a more lenient aggregate sentence. *Id.* at 20. Guilty plea counsel testified he discussed this strategy with Appellant. *Id.* Specifically, he testified that he discussed the idea of consolidating sentencing on four cases (the two VOP cases, the case at docket number 1062-2020, and the case at docket number 270-2021), so that Judge Covington would sentence Appellant at one hearing. *Id.* Guilty plea counsel testified he also discussed with Appellant the possibility of consolidating the four cases before Judge Campbell. *Id.* However, in the end, after "specific conversations with [Appellant] and his family,…the strategy was to get Judge Covington to take the VOPs from Judge Campbell." *Id.* at 19.

Guilty plea counsel testified that, when Appellant appeared before Judge Covington to enter his guilty plea at docket number 270-2021, he asked Judge Covington if she would take the VOP cases, and she said, "Absolutely." *Id.* Guilty plea counsel testified he was "tickled to death" by this; however, thereafter, Judge Campbell declined to reassign the VOP cases to Judge Covington. *Id.* Guilty plea counsel testified he tried to "achieve consolidation" before Judge Covington, but "Judge Campbell was not having it." *Id.* at 23.

Guilty plea counsel noted he was disappointed with the sentence imposed by Judge Covington for the firearm offense at docket number 270-2021. *Id.* at 24. He noted that, given the abundance of mitigation, he

believed Appellant would receive a sentence well below that which was imposed by Judge Covington. *Id.* He also noted that, in the VOP cases, Judge Campbell imposed sentences consecutive to the sentence Appellant received at docket number 270-2021. *Id.*

On cross-examination, guilty plea counsel testified that he had better communication with Appellant than he had with many of his other clients. *Id.* at 27. He noted he had many phone conversations with him. *Id.* Guilty plea counsel confirmed he sought consolidation of Appellant's cases before Judge Covington. *Id.* at 30-31. He testified he "wanted to consolidate before Judge Covington because [he] thought [he] would get a…fair resolution." *Id.* at 34. Guilty plea counsel testified he could not remember if his conversation with Judge Convington regarding consolidation was "on the record," but he "vividly" remembered the conversation. *Id.*

Guilty plea counsel reiterated that, if Appellant had asked, he would have filed a motion to withdraw his guilty plea. *Id.* He noted he made no promises to Appellant. *Id.*

Malik Wilson, who is Appellant's stepfather, testified that, after Appellant was sentenced on February 11, 2022, guilty plea counsel informed him that he "didn't live up to his standards in representing [Appellant]." *Id.* at 39. Mr. Wilson indicated he participated in three-way phone calls with Appellant and guilty plea counsel "four or five" times. *Id.* at 40. He testified he never heard guilty plea counsel discuss sentencing guidelines or consolidation; however,

he admitted he heard guilty plea counsel indicate he was looking to have all the cases heard before a "better judge." *Id.* at 41.

Appellant testified guilty plea counsel never visited him, and he had difficulty getting guilty plea counsel to answer the telephone. *Id.* at 48. He acknowledged he spoke to guilty plea counsel during three-way calls involving his stepfather. *Id.* He testified he asked guilty plea counsel to set up video calls; however, guilty plea counsel declined. *Id.*

Regarding the Commonwealth's "smart room" offer, Appellant admitted that guilty plea counsel told him about the offer. *Id.* at 49. Appellant specifically admitted that guilty plea counsel told him the offer was for four to eight years in prison for the firearm case, and guilty plea counsel advised him to take the offer. *Id.* However, Appellant testified guilty plea counsel "never told me that the DA was talking about consolidating[.]" *Id.* He testified that any discussions about consolidating were done "behind his back," and if he had known about the discussions, he "wouldn't have taken a guilty plea for a five to ten minimum." *Id.*

PCRA counsel asked Appellant whether guilty plea counsel "advised [him] that the VUFA 6105…guidelines were 60 to 70 months plus or minus 12, and that is five years….That would be five to six-and-a-half years at the bottom end plus or minus 12 months?" *Id.* at 50. Appellant responded that he "never even heard of VUFA until [he] came up state and filed a PCRA. It

was never brought up to [him], no guidelines or anything. [He] never heard of 6105 VUFA." *Id.*

Appellant admitted that, after the police produced a video of the vehicle stop related to the charges at docket number 270-2021, he and guilty plea counsel decided "he wouldn't be able to beat the case. [The] agreement was for [counsel] to get [him] a good deal." *Id.* at 51. Appellant claimed that he, as opposed to counsel, asked Judge Covington to sentence him on all of his cases, including the VOP cases. *Id.* at 52. Appellant testified guilty plea counsel never discussed any kind of case law associated with consolidation. *Id.* at 54.

Appellant testified he twice asked guilty plea counsel to file a motion to withdraw his guilty plea after he was sentenced to five years to ten years in prison. *Id.* Appellant testified that he told counsel: "Withdraw the guilty plea, I don't want the five to 10. They offered me four to eight." *Id.* at 53. Appellant claimed that, after the February 11, 2022, sentencing hearing, guilty plea counsel "hid from [him]." *Id.* He noted that he received a consecutive three to six years in prison from Judge Campbell on the VOP cases. *Id.* at 54.

At the conclusion of the evidentiary hearing, by order entered on September 30, 2024, the PCRA court denied Appellant's PCRA petitions at both docket numbers.

On October 29, 2024, Appellant filed timely separate *pro se* notices of appeal at both docket numbers. Attorney O'Hanlon withdrew his appearance,

- 13 -

and new counsel, Scott Sigman, Esquire, entered his appearance on behalf of Appellant. This Court *sua sponte* consolidated the notices of appeal. All Pa.R.A.P. 1925 requirements have been adequately met.

On appeal, Appellant sets forth the following issues in his "Statement of the Questions Involved" (verbatim):

1. Whether the lower court erred in denying [Appellant's] Petition for Post-Conviction Collateral Relief pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9542-46, by Court Order of September 30, 2024, without affording him an evidentiary hearing since [Appellant's] conviction and sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place?

2. Whether the lower court erred in denying [Appellant's] Petition for Post-Conviction Collateral Relief pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9542-46, by Court Order of September 30, 2024, without affording him an evidentiary hearing since, under the totality of the circumstances, there are genuine issues concerning material facts and legitimate purposes would be served by such hearing?

3. Whether the lower court erred in denying [Appellant's] Petition for Post-Conviction Collateral Relief pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9542-46, by Court Order of September 30, 2024, without affording him an evidentiary hearing since [Appellant's] petition makes out a *prima facie* case warranting such hearing under the totality of circumstances, since trial counsel provided ineffective assistance that lacked any reasonable basis which prejudiced [Appellant]?

Appellant's Brief at 6-7.

Initially, we note the following:

- 14 -

On appeal from the denial of PCRA relief, our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. The PCRA court's factual determinations are entitled to deference, but its legal determinations are subject to our plenary review.

***Commonwealth v. Nero***, 58 A.3d 802, 805 (Pa.Super. 2012) (quotation marks and quotations omitted).

Before addressing the merits of the issues presented on appeal, we must determine whether we have jurisdiction.

Pennsylvania law makes clear no court has jurisdiction to hear an untimely PCRA petition. The most recent amendments to the PCRA, effective January 16, 1996, provide a PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

***Commonwealth v. Monaco***, 996 A.2d 1076, 1079 (Pa.Super. 2010) (citations omitted).

[There are] three statutory exceptions to the timeliness provisions in the PCRA [that] allow for the very limited circumstances under which the late filing of a petition will be excused. 42 Pa.C.S.A. § 9545(b)(1). To invoke an exception, a petitioner must allege and prove:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

*Id.* at 1079-80 (citing 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii)).

Any petition invoking a timeliness exception must be filed within one year of the date the claim could have been presented.[12] 42 Pa.C.S.A. § 9545(b)(2). "We emphasize that it is the petitioner who bears the burden to allege and prove that one of the timeliness exceptions applies." *Commonwealth v. Marshall*, 947 A.2d 714, 719 (Pa. 2008) (citation omitted). Lastly, there is "no generalized equitable exception to the jurisdictional one-year time bar pertaining to post-conviction petitions." *Commonwealth v. Brown*, 943 A.2d 264, 267 (Pa. 2008).

As indicated *supra*, the instant matter involves Appellant's appeals from the September 20, 2024, order denying his PCRA petitions at two separate lower court docket numbers: 1062-2020 and 270-2021. We examine each appeal in turn to determine whether the appeal is properly before us.

Regarding docket number 1062-2020, Appellant was sentenced on February 11, 2022, and he filed a timely post-sentence motion, which the trial

---

[12] On October 24, 2018, the General Assembly amended Section 9545(b)(2) and extended the time for filing a petition from sixty days to one year from the date the claim could have been presented. *See* 2018 Pa.Legis.Serv.Act 2018-146 (S.B. 915), effective December 24, 2018. The amendment applies only to claims arising one year before the effective date of this section, December 24, 2017, or thereafter.

court denied on June 24, 2022. Appellant did not file a direct appeal.[13] Accordingly, his judgment of sentence became final thirty days later, on July 24, 2022, when the time for filing a direct appeal to this Court expired. ***See*** 42 Pa.C.S.A. § 9545(b)(3); Pa.R.A.P. 903(a). Appellant had one year, until approximately July 24, 2023, to file a timely PCRA petition. ***See*** 42 Pa.C.S.A. § 9545(b)(1). However, Appellant filed his PCRA petition at docket number 1062-2020 on June 10, 2024, and, consequently, it is facially untimely.

However, this does not end our inquiry as Appellant alleges on appeal that he has met the newly discovered facts exception under Subsection 9545(b)(1)(ii). Specifically, pointing to the assertions he made in his counseled PCRA petition filed on June 10, 2024, as well as the counseled amended PCRA petition on June 27, 2024, Appellant suggests that he pled and proved "there exists newly discovered evidence in relation to Detective Rodney Hunt." Appellant's Brief at 17. He avers that evidence of Detective Hunt's habit of violating departmental rules, including giving false testimony, was not disclosed to him prior to the entry of his guilty plea. Accordingly, he claims he has met the newly discovered facts exception as it relates to docket number 1062-2020. We disagree.

_____

[13] Notably, contrary to docket number 270-2021, Appellant's appeal rights were not reinstated *nunc pro tunc* via the PCRA for docket number 1062-2020.

Here, at the commencement of the September 20, 2024, PCRA evidentiary hearing,[14] PCRA counsel advised the PCRA court that Appellant was withdrawing all claims related to the alleged corruption/misconduct of Detective Hunt.  N.T., 9/30/24, at 8.  Specifically, PCRA counsel stated, "[Detective Hunt's] recent misconduct would not be relevant to any misconduct associated with [Appellant's] case."  *Id.* Accordingly, the issue of Detective Hunt's alleged misconduct was neither explored nor further discussed at the PCRA evidentiary hearing, and Appellant offered no evidence related thereto.

Accordingly, inasmuch as Appellant withdrew his claim of newly discovered facts,[15] we conclude the issue is waived.  *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Leaner*, 202 A.3d 749, 765 n.3

_____

[14] In his appellate brief, in the procedural history set forth in the "Statement of the Case," Appellant acknowledges that "[f]ollowing an evidentiary hearing on September 30, 2024, the PCRA [petition] was denied."  Appellant's Brief at 9.  However, he then inexplicably sets forth his appellate issues and arguments based on the premise that no such evidentiary hearing occurred. We note the transcript of the PCRA evidentiary hearing has been provided to this Court.

[15] In developing his argument, Appellant points to the allegations made in his PCRA petition.  Appellant has not alleged that he learned of "new facts" of additional police misconduct since the time he withdrew the claim at the September 30, 2024, evidentiary hearing.  Also, he has not alleged PCRA counsel was ineffective in withdrawing the claim during the PCRA evidentiary hearing.

- 18 -

(Pa.Super. 2019) (holding where issue is raised in a motion, but abandoned during the hearing before the lower court, the issue is waived on appeal). Stated differently, Appellant failed to allege and prove that the timeliness exception under Subsection 9545(b)(1)(ii) applies. *See Marshall*, *supra*. Moreover, Appellant has not sought to invoke the timeliness exceptions under Subsections 9545(b)(1)(i) or (iii).[16] Thus, as to docket number 1062-2020, we affirm the PCRA court's September 30, 2024, order denying Appellant's PCRA petition on the basis it was untimely filed.[17]

Turning to Appellant's appeal at docket number 270-2021, Appellant was sentenced on February 11, 2022, and he filed a timely post-sentence motion on February 16, 2022, which the trial court denied on June 24, 2022. Thereafter, Appellant did not file a timely direct appeal; however, he filed a timely *pro se* PCRA petition seeking the restoration of his direct appeal rights *nunc pro tunc*. The PCRA court granted this PCRA petition, and within thirty

_____

[16] Appellant's remaining claims on appeal allege the ineffective assistance of guilty plea counsel. These claims do not invoke the timeliness exceptions under Subsection 9545(b)(1). *See Commonwealth v. Howard*, 788 A.2d 351 (Pa. 2002).

[17] Given the length of Appellant's sentence for docket number 1062-2020 (*i.e.,* time served to six months in prison), it is unclear whether Appellant is currently serving a sentence of imprisonment, probation, or parole for the conviction. *See* 42 Pa.C.S.A. § 9543(a)(1)(i). Thus, it is unclear whether Appellant is eligible for PCRA relief. *See id.* However, given our holding *supra*, we need not address the eligibility issue further.

days, Appellant filed a direct appeal *nunc pro tunc* from his February 11, 2022, judgment of sentence.

On December 19, 2023, this Court affirmed Appellant's judgment of sentence at docket number 270-2021, and Appellant did not file a petition for allowance of appeal with our Supreme Court. Thus, Appellant's judgment of sentence became final thirty days later, on January 18, 2024, when the time for filing a petition for allowance of appeal expired. *See* Pa.R.A.P. 1113; 42 Pa.C.S.A. § 9545(b)(3).

As such, Appellant had until approximately January 18, 2025, to file a timely PCRA petition. On January 22, 2024, Appellant filed his *pro se* PCRA petition (now considered his first),[18] and, thus, it is timely. Accordingly, we shall proceed to examine the appellate issues presented by Appellant as to docket number 270-2021.

In doing so, we preliminarily note that, in his "Statement of the Questions Involved," Appellant has phrased his issues in terms of the PCRA court erring in denying his PCRA petition without holding an evidentiary hearing. Further, in the argument portion of his brief, he suggests he is entitled to a PCRA evidentiary hearing.

---

[18] We note that, when a PCRA petitioner's direct appeal rights are reinstated *nunc pro tunc* via a timely PCRA petition, a subsequent PCRA petition is considered a first PCRA petition for timeliness and review purposes. *See Commonwealth v. Karanicolas*, 836 A.2d 940 (Pa.Super. 2003).

However, as indicated *supra*, to the extent Appellant asserts the PCRA court denied his PCRA petition at docket number 270-2021 without holding an evidentiary hearing, he is factually mistaken. Specifically, on September 30, 2024, the PCRA court held a full evidentiary hearing in accordance with the PCRA, and the transcript from the hearing has been provided to this Court. Thus, we refer to the September 30, 2024, hearing in reviewing Appellant's claims.

Initially, Appellant claims he has after-discovered evidence that Detective "Hunt had a pattern or habit of violating departmental rules." Appellant's Brief at 17. He avers that "[b]ut for Detective Hunt's prospective false testimony and inadequate supervision there was no basis for a pretextual traffic stop of Appellant." *Id.* He avers that he did not litigate a suppression motion, and decided to plead guilty, because he did not know about Detective Hunt's pattern of misconduct. *Id.* Therefore, Appellant claims he is entitled to withdraw his guilty plea and proceed to trial.

As the Commonwealth notes on appeal, and as discussed *infra*, Appellant specifically withdrew his claim of corruption/misconduct during the September 30, 2024, PCRA evidentiary hearing.[19] Since Appellant abandoned

_____

[19] In developing his argument, Appellant points to the allegations he made in his PCRA petition. Appellant has not alleged that he learned of "new evidence" of additional police misconduct since the time he withdrew the claim at the September 30, 2024, evidentiary hearing. Also, he has not alleged that PCRA counsel was ineffective in withdrawing the issue during the PCRA evidentiary hearing.

his claim of after-discovered evidence as to Detective Hunt's alleged history of misconduct, we conclude the claim has been waived for appeal purposes, and we decline to address it further. *See* Pa.R.A.P. 302(a); *Leaner*, *supra*.

Appellant's remaining claims allege the ineffective assistance of guilty plea counsel. Specifically, Appellant alleges guilty plea counsel (1) failed to advise Appellant of the applicable sentencing guidelines for the offense of possession of firearm prohibited, 18 Pa.C.S.A. § 6105(a)(1); (2) failed to discuss with Appellant the strategy of consolidating all cases for sentencing pursuant to Pa.R.Crim.P. 701; and (3) failed to file a post-sentence motion to withdraw Appellant's guilty plea.

In reviewing Appellant's ineffective assistance of counsel claims, we are mindful that, since there is a presumption counsel provided effective representation, the defendant bears the burden of proving ineffectiveness. *Commonwealth v. Ali*, 10 A.3d 282 (Pa. 2010). To prevail on an ineffective assistance claim, a defendant must establish "(1) [the] underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his [client's] interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different." *Id.* at 291 (citations omitted). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Id.* Notably, "[c]ounsel cannot be deemed

- 22 -

ineffective for failing to raise a meritless claim." ***Commonwealth v. Johnson***, 139 A.3d 1257, 1272 (Pa. 2016) (citation omitted).

> A criminal defendant has the right to effective counsel during a plea process as well as during trial. Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief…if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

***Commonwealth v. Moser***, 921 A.2d 526, 531 (Pa.Super. 2007) (quotations and quotation marks omitted). ***See Commonwealth v. Kersteter***, 877 A.2d 466, 467 (Pa.Super. 2005) (holding a PCRA petitioner will be eligible to withdraw his plea if he establishes ineffective assistance of counsel caused the petitioner to enter an involuntary guilty plea, or the guilty plea was unlawfully induced, and the petitioner is innocent).

In the case *sub judice*, Appellant first contends his guilty plea was involuntarily and unknowingly entered since guilty plea counsel failed to advise him of the applicable sentencing guidelines for the offense of possession of firearm prohibited, 18 Pa.C.S.A. § 6105(a)(1).

It is well-settled that "a guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." ***Commonwealth v. Carter***, 464 A.2d 1327, 1334 (Pa.Super. 1983) (citation omitted). However, "[o]ur law presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden of doing otherwise."

*Commonwealth v. Rush*, 909 A.2d 805, 808 (Pa.Super. 2006). "Where the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established." *Id.*

In the case *sub judice*, in finding no arguable merit to Appellant's claim, the PCRA court indicated it found credible guilty plea counsel's testimony that he advised Appellant of the applicable sentencing guidelines. N.T., 9/30/24, at 74. We find no error or abuse of discretion in this regard. *See Commonwealth v. Spotz*, 18 A.3d 244 (Pa. 2011) (holding that, following a PCRA evidentiary hearing, credibility determinations are within the province of the PCRA court, and when such credibility determinations are supported by the record, they are binding on the appellate courts).

Specifically, during the PCRA evidentiary hearing, counsel noted "the VUFA guideline for this case, because it was stated during the guilty plea, were 60 to 70 months, plus or minus 12 months[.]" *Id.* at 17. PCRA counsel asked guilty plea counsel if the sentencing guidelines were explained to Appellant before he entered his guilty plea, and guilty plea counsel answered, "Of course." *Id.* He noted he also explained to Appellant that "the bottom end of the guidelines would be five to 10 years." *Id.* He additionally noted he explained to Appellant that the offer made by the Commonwealth in the "smart room" was "a year below the bottom of the guidelines." *Id.* That is, he testified he fully explained to Appellant that the offer made by the

Commonwealth was "below the bottom range of the guidelines and in the fully mitigated range of the guidelines for VUFA 6105[.]" **Id.** at 23.

Based on the aforementioned, we agree with the PCRA court that Appellant failed to demonstrate his underlying claim has arguable merit. That is, based on guilty plea counsel's testimony, which the PCRA court found credible, guilty plea counsel thoroughly discussed the applicable sentencing guidelines with Appellant before he entered his open guilty plea to the firearm offense at docket number 270-2021. Since the record supports the PCRA court's credibility determination, we are bound by the PCRA court's determination. **See Commonwealth v. Johnson**, 966 A.2d 523, 539 (Pa. 2009) ("A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts.") (citation omitted)).

Appellant next contends his guilty plea was involuntarily and unknowingly entered since guilty plea counsel failed to discuss with him the strategy of consolidating all outstanding cases for sentencing pursuant to Pa.R.Crim.P. 701.[20] Appellant claims that, had he known counsel was

---

[20] Pennsylvania Rule of Criminal Procedure 701 provides the following:
**Rule 701. Pleas of Guilty to Multiple Offense.**
(A) Before the imposition of sentence, the defendant may plead guilty to other offenses that the defendant committed within the jurisdiction of the sentencing court.
(B) When such pleas are accepted, the court shall sentence the defendant for all the offenses.
Pa.R.Crim.P. 701 (bold in original).

attempting to consolidate all cases for sentencing, he would not have pled guilty to the firearm offense.

In the case *sub judice*, in finding no arguable merit to Appellant's claim, the PCRA court indicated it found credible guilty plea counsel's testimony that he discussed consolidation of the cases for sentencing purposes with Appellant. N.T., 9/30/24, at 73-75. We find no error or abuse of discretion in this regard. ***See Spotz***, ***supra***.

Specifically, during the PCRA evidentiary hearing, guilty plea counsel indicated Appellant's cases at docket numbers 1062-2020 and 270-2021 were assigned to Judge Convington; however, Appellant had two VOP cases, which were assigned to Judge Campbell. He testified he had a "great concern" that Judge Campbell would "hit Appellant hard" as to his pending VOP cases. N.T., 9/30/24, at 18. Guilty plea counsel testified he believed that, if the VOP cases and firearm case were dealt with at one proceeding, Appellant would get a more lenient aggregate sentence. ***Id.*** at 20. Guilty plea counsel testified he discussed this strategy with Appellant. ***Id.***

Specifically, he testified that he discussed the idea of consolidating sentencing on four cases (the two VOP cases, the case at docket number 1062-2020, and the case at docket number 270-2021), so that Judge Covington would sentence Appellant at one hearing. ***Id.*** Guilty plea counsel testified he also discussed with Appellant the possibility of consolidating the four cases before Judge Campbell. ***Id.*** However, in the end, after "specific

conversations with [Appellant] and his family,…the strategy was to get Judge Covington to take the VOPs from Judge Campbell." *Id.* at 19

Accordingly, when Appellant appeared before Judge Convington for the proceedings at docket number 270-2021, he asked Judge Convington if she would accept Appellant's VOP cases, and she said, "Absolutely." *Id.* However, guilty plea counsel testified that, thereafter, Judge Campbell declined to reassign the VOP cases to Judge Covington. *Id.* Thus, guilty plea counsel testified he tried to "achieve consolidation" before Judge Covington, but "Judge Campbell was not having it."[21] *Id.* at 23.

Based on the aforementioned, we agree with the PCRA court that Appellant failed to demonstrate his underlying claim has arguable merit. That is, based on guilty plea counsel's testimony, which the PCRA court found credible, guilty plea counsel thoroughly discussed the strategy of consolidating cases for purposes of sentencing with Appellant before he entered his open guilty plea to the firearm offense at docket number 270-2021. *See Spotz*, *supra* (holding the PCRA court, as the fact finder at a PCRA hearing, is in the best position to evaluate witness credibility and determine the facts).

Appellant next contends guilty plea counsel was ineffective in failing to file a post-sentence motion to withdraw his guilty plea at docket number 270-2021. Specifically, pointing to the assertions that he made in his January 22,

_____

[21] As indicated *supra*, guilty plea counsel achieved consolidation for sentencing purposes as to docket numbers 1062-2020 and 270-2021.

- 27 -

2024, *pro se* PCRA petition, Appellant notes he was dissatisfied with his sentence at docket number 270-2021, and, thus, he wanted to withdraw his guilty plea. **See** Appellant's Brief at 18 (citing Appellant's PCRA petition, filed 1/22/24, at 2, 7). He avers that, despite his repeated requests, guilty plea counsel failed to file a post-sentence motion to withdraw his guilty plea.

In the case *sub judice*, in finding no arguable merit to Appellant's claim, the PCRA court indicated it found credible guilty plea counsel's testimony that Appellant never requested that he file a motion to withdraw his guilty plea. N.T., 9/30/24, at 73-75. We find no error or abuse of discretion in this regard. **See Spotz**, **supra**.

It is well-settled that counsel will not be deemed ineffective for failing to file post-sentence motions where the defendant did not request that counsel file a post-sentence motion. **See Commonwealth v. Cook**, 547 A.2d 406, 408 (Pa.Super. 1988) (explaining that, "[i]n the absence of a request to file post-trial motions, counsel will not be deemed ineffective for failing to file the same"). Moreover, "[c]ounsel cannot be found ineffective for failing to pursue a baseless or meritless claim." **Commonwealth v. Davis**, 262 A.3d 589, 596 (Pa.Super. 2021) (citation omitted).

Here, during the evidentiary hearing, guilty plea counsel testified that he did not file a motion to withdraw Appellant's guilty plea because "he wasn't asked to." N.T., 9/30/24, at 15. He testified that, had Appellant asked him to do so, he would have filed a motion to withdraw his guilty plea. **Id.** at 34.

The PCRA court was free to accept guilty plea counsel's testimony, and, therefore, the record supports the PCRA court's finding that trial counsel could not be deemed ineffective for failing to file a post-sentence motion. **See Cook**, **supra**. That is, the record supports the PCRA court's findings and credibility determinations, which merit deference. **See Johnson**, **supra**.

Additionally, we note that, at the conclusion of the PCRA hearing, the PCRA court indicated the following:

> Just for further information, on the record, the [PCRA] court finds that [Appellant] was fully aware when he entered into the open guilty plea before the [trial] court. The transcript and record are clear that he was appropriately colloquied by the [trial] court in the presence of counsel. [The trial court] inquired…if he had discussed the issues of the open plea as far as entering into an open plea at the bar of court with counsel.

N.T., 9/30/24, at 74-75.

Ultimately, the PCRA court found Appellant failed to present credible evidence suggesting that his plea was anything but knowing, voluntary, and intelligent. The plea colloquy was thorough and complete. Appellant stated under oath that he understood the nature of the charges, the maximum possible penalties, and the rights he was waiving. N.T., 12/10/21, at 1-8. He further affirmed that guilty plea counsel explained his plea, and no one threatened or forced him to plead guilty. **Id.**

We conclude the PCRA court properly found Appellant was not entitled to relief on his ineffective assistance of guilty plea counsel claim. Appellant is bound by the statements, which he made under oath. **Commonwealth v.**

***Yeomans***, 24 A.3d 1044 (Pa.Super. 2011). While Appellant may be displeased with the sentence imposed following his open guilty plea, we note a defendant need not be pleased with the outcome of his decision to plead guilty. ***See Commonwealth v. Anderson***, 995 A.2d 1184 (Pa.Super. 2010). "All that is required is that [his] decision to plead guilty be knowingly, voluntarily, and intelligently made." ***Id.*** at 1192.

In the case *sub judice*, we agree with the PCRA court that the record reveals Appellant entered his guilty plea knowingly, voluntarily, and intelligently. Consequently, there is no arguable merit to the underlying claim, and counsel cannot be deemed ineffective. ***See Johnson***, ***supra***.

For all of the foregoing reasons, we conclude Appellant's PCRA petition filed at lower court docket number 1062-2020 is untimely. Further, although Appellant's PCRA petition was timely filed at lower court docket number 270-2021, we conclude Appellant is not entitled to relief on his claims of after-discovered evidence and ineffective assistance of guilty plea counsel. Thus, we affirm the PCRA court's September 30, 2024, order denying his PCRA petitions at both docket numbers.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>8/22/2025</u>